**Earl A. McCLEARY and Ruth A. McCleary, his wife, Respondents,**

v.

**William W. BRATTON and Genevieve B. Bratton, his wife, Appellants.**

No. 22668.

Kansas City Court of Appeals. Missouri.

Dec. 2, 1957.

D. F. Calfee, Keyes & Bushman, Jefferson City, for appellants.

Bond & Dominique, John O. Bond, P. Pierre Dominique, Jefferson City, for respondents.

BROADDUS, Presiding Judge.

This is an action for damages for breach of the covenants of warranty contained in a deed from defendants, William W. Bratton and his wife to plaintiffs, Earl A. and Ruth A. McCleary. A jury having been waived, the cause was submitted to the court for trial, resulting in a judgment against defendants for $1,225.25, from which they have appealed.

The property involved is a triangular piece of land abutting on U. S. Highway 54 at Holt's Summit in Callaway County, containing 1.1 acres. Defendants sold the property to plaintiffs on October 5, 1948, for $800, and executed and delivered to them a warranty deed which contained the covenants that defendants were lawfully seized of an indefeasible estate in fee and would warrant and defend the title to said premises into plaintiffs.

The evidence shows that in November, 1951 plaintiff, Ruth McCleary, saw Lucien Perrey and other men driving stakes in the south portion of the land she and her husband had purchased from defendants. She went to these men and asked "what they were doing. Mr. Perrey said the ground belonged to him, and he was going to build a house. I said, 'Mr. Perrey, you can't do that; that belongs to me.' He said, Mr. Bratton says it belongs to me. I said, 'We have a warranty deed.' We had a few words. He ordered me off the ground. I ordered him off." Immediately after this occurrence, Mrs. McCleary called Mr. Bratton and told him "what Mr. Perrey was doing. He said, 'Don't worry about it. * * * That ground belongs to you.' " She requested Mr. Bratton to "straighten out this dispute," but that she heard no more from him for some time.

On December 28, 1951, plaintiffs received a letter from Mr. J. R. Baker, a highly respected lawyer of Fulton, who represented Mr. and Mrs. Lucien Perrey. In this letter Mr. Baker stated that "there can not be any question but what Mr. and Mrs. Perrey's title to this property is superior to yours. * * * So unless I am advised that you will quit interfering with Mr. Perrey in the use of his land I shall have to bring some sort of legal proceedings." Upon receipt of this letter Mrs. McCleary went to Jefferson City to see Mr. Bratton. She showed him the letter and asked him to take steps to clear the difficulty involving the land, but to her knowledge Mr. Bratton made no effort to remedy the problem.

In September of 1952 plaintiffs sought legal advice. After plaintiffs consulted with their counsel, the latter called the defendants on several occasions regarding the disputed title. On October 4, 1952, they wrote to Mr. Bratton demanding that he "take whatever steps are necessary to clear the title to said land in Mr. and Mrs. McCleary. If satisfactory action is not initiated on or before October 15, 1952, we intend to bring suit to quiet title on behalf of the McClearys in the Circuit Court of Callaway County and shall look to you for payment of all of the costs including court costs and attorneys fees involved in said suit." Plaintiffs' counsel testified that he received no reply to this letter.

On October 25, 1952, suit to quiet title was instituted on behalf of plaintiffs in the Circuit Court of Callaway County against Lucien and Grace Perrey. After the suit was instituted plaintiffs' attorney spoke to defendants on a number of occasions concerning the matter and subpoenaed defendant William Bratton to appear as a witness on behalf of plaintiffs. Mr. Bratton called plaintiffs' attorney saying that on account of the sickness of his wife he could not appear.

The cause between plaintiffs and the Perreys went to trial in the Circuit Court of Callaway County on January 14, 1954.

The Court found that both the McClearys and the Perreys acquired such title as they had through William and Genevieve Bratton; that the deed under which the Perreys held was executed on January 20, 1939, but that the deed under which the McClearys held was not executed until October 5, 1948; that there was "an overlapping of the descriptions of 287 feet"; that the Perreys were the owners of the land in dispute, and rendered judgment accordingly, taxing the costs against plaintiffs. On January 20, 1954, plaintiffs' attorney advised defendants of the judgment and of his intention to file a motion for a new trial. He received no response to this letter. On April 16, 1954, prior to the expiration of the right to appeal, he notified defendants that if they did not take steps to appeal and if the judgment became final suit would be instituted against defendants for breach of warranty.

The surveyor of Callaway County testified that he prepared a plat concerning plaintiffs' land and the land of the Perreys according to their respective deeds, and that the land, according to the deed from defendants to plaintiffs, was triangular in shape and amounted to 1.1 acres; that the description of the real estate owned by the Perreys overlapped 0.84 acres of the land deeded from defendants to plaintiffs, leaving plaintiffs with 0.26 acres of their original purchase.

There was testimony to the effect that the portion of the tract taken from plaintiffs was reasonably worth $700. The testimony concerning the attorneys fees was that they were reasonably worth from $500 to $750. The court costs of the suit to quiet title amounted to $25.25.

The court's judgment assessed plaintiffs damages by reason of the loss of the land at $700; attorneys fees at $500, and the court costs at $25.25, or a total of $1,225.25.

Defendants first contend that the court erred in its finding of fact (No. 2) which is as follows: "The Court finds that in November, 1951, one Lucien V. Perrey made

·claim to the south 287 feet of said land, interfered with plaintiffs' use and enjoyment thereof, evicted plaintiffs therefrom, and employed an attorney who notified the plaintiffs in writing to quit using said 'land." Defendants assert that nowhere in the record is there any evidence to support ·this finding.

In Am.Jur. Vol. 14, Covenants, Sec. 93, p. 544, it is said: "In order to establish a breach of covenant of quiet enjoyment, it is not essential to establish an eviction ·or ouster by process of law consequent to a judgment or to show an actual dispossession of the grantee. A constructive eviction is sufficient," And in 172 A.L.R. p. 21, it is stated that the overwhelming weight of authority is to the effect that it is not essential that there be an actual expulsion of the grantee in order to constitute a breach of covenant of warranty, a constructive eviction being sufficient.

■ We have set forth the evidence ·showing that Perrey drove stakes on the ·south portion of the land plaintiffs had purchased; that he ordered plaintiffs off the land; that he employed an attorney who notified plaintiffs to "quit interfering" with Perrey's use of the land, otherwise he would bring legal proceedings against them. Mr. Perrey stated from the witness stand that his purpose in driving stakes was "to let them (plaintiffs) know that I had possession, that I did intend to build a house there." These acts were sufficient to show a constructive eviction of the plaintiffs from the land in question.

■ Defendants also contend that the court erred in its declaration of law No. 1 which states: "The Court declares the law to be that the owner of land may be evicted therefrom by actual eviction or constructive eviction and that interference by one claiming under paramount title in the use and enjoyment of the owner's land constitutes an eviction therefrom." There can be no question but that this properly declares the law. In 21 C.J.S. Covenants

§§ 108, 112, pages 965 and 977, it is said that an actual *disturbance* of the possession by one having the paramount title amounts to an eviction. It is to be noted that the court used the word "interference." According to Webster's New International Dictionary "disturb" means "to interfere with in the lawful enjoyment of a right." And it cannot be denied that the Perreys had paramount title. That was established in the Callaway County suit.

■ Defendants likewise assert "that the court erred in its finding of fact No. 3 that plaintiffs notified defendants of 'such eviction' by Perrey and requested defendants to defend the title to said land and in refusing to defend the title thereto." We have set out the evidence which amply supports the Court's finding. There is no need to again review it.

The Court's finding of fact No. 5 is as follows:

"The Court finds the reasonable market value of the south 287 feet of the land purchased by plaintiffs from defendants is Seven Hundred Dollars ($700), and finds that plaintiffs employed attorneys to defend the title to said land and that the reasonable attorney fee for the prosecution of said suit is Five Hundred Dollars ($500); that the Court costs in the Callaway County suit were Twenty-five Dollars and Twenty-five Cents ($25.25); that plaintiffs were damaged by defendants' breach of covenant in the total sum of One Thousand Two Hundred Twenty-five Dollars and Twenty-five Cents ($1,225.25)."

■ Defendants' criticism of the finding deals with that portion relating to attorneys fees. They say there was "no evidence as to what amount, if any was actually charged." The testimony of Mrs. McCleary was to the effect that when she retained counsel to defend title to the property in question she did not

agree to pay them a certain fee for the services they were to render. The law is, as stated in Schaper v. Sayman, Mo.App., 61 S.W.2d 379, 381, that: "Where any attorney at law renders services to a client at the latter's request, a promise to pay the reasonable value of such services will be implied unless there is an express contract." Inasmuch as there was no express contract in the instant case to pay a sum certain, plaintiffs were entitled to adduce evidence as to the reasonable value of the services rendered by their attorneys.

■ Defendants also contend that the court erred in excluding evidence, the purpose of which was to show that the trial of the case of McClearys v. Perreys was not properly conducted. The following language of this court appearing in the case of Talbert v. Grist, 198 Mo.App. 492, 201 S.W. 906, 908, is a complete answer to defendants' contention:

"This judgment was binding on the parties therein and their privies whether or not the court rendered the same on erroneous conclusions of law, and the parties thereto and their privies were not in a position thereafter to urge that the deeds from Wilson to the Greentop Telephone Exchange and from the latter to Buchanan and Farrington were void deeds. The loss having fallen upon these plaintiffs the covenant in defendant's deed inured to them.  *  *  *

*  *  *  *  *  *

" *  *  * Had the defendant been present and defended those suits as he was in duty bound under his covenant and warranty, he might have made objection then as to the theory upon which the case was being tried. Not having been present he is now estopped from saying that the case was not *properly tried*, and he is bound by the judgments of the court in those cases awarding the improvements to the defendants therein."

We have examined defendants' remaining contentions and find them to be without merit. The case was well tried and the judgment should be affirmed. It is so ordered.

All concur.