**E. B. JONES MOTOR COMPANY, a Corporation (Plaintiff), Appellant,**

v.

**Pauline T. NIEDRINGHAUS, Harrison L. Winter and The Guaranty Trust Company of Missouri, Trustees U/I Robert L. Niedringhaus, dated June 8, 1939, et al. (Defendants), Respondents.**

No. 30102.

St. Louis Court of Appeals.

Missouri.

April 1, 1959.

Lowenhaupt, Mattingly, Chasnoff, Freeman & Holland, Richard D. FitzGibbon, Jr., St. Louis, for appellant.

Michael Jos. Hart, Donald E. Fahey, St. Louis, for respondents.

HOUSER, Commissioner.

This is a suit by E. B. Jones Motor Company against Pauline T. Niedringhaus et

al., lessors, to recover the purchase price of certain personal property located upon the leased premises and the cost of improvements made in reliance on lessors' title. Lessors counterclaimed for unpaid rent. The court directed a verdict for defendants-lessors both on plaintiff's petition and on defendants' counterclaim. From the ensuing judgment plaintiff appealed to this court.

The petition alleged that on September 2, 1952, the premises were leased to plaintiff's predecessor; that rent was paid until May 4, 1954, when it "discovered that there was an easement across a portion of said demised premises and that the holder of said easement was intending to use said easement and thereby deprive plaintiff's predecessor of the full beneficial use of the demised premises;" that on July 1, 1954, plaintiff gave notice of its intention to rescind the lease and tendered possession of the premises; that the deprivation of the entire beneficial use of the premises inflicted damage to plaintiff and its predecessor for items of personal property upon the premises purchased in reliance upon lessors' representation of title and for monies spent to adapt and improve the premises for lessee's use (a used car sales lot).

The answer of lessors consisted of an admission "that the property here involved is burdened with an easement across a portion of its premises," and a general denial. The counterclaim of lessors alleged that the parties mutually cancelled the lease on December 31, 1954, but that plaintiff was liable for and on demand had failed to pay the rent from May 4, 1954, to December 31, 1954 and prayed for $2,170.

In its reply plaintiff acknowledged the cancellation of the lease on December 31, 1954, but denied liability for rent as claimed.

The leased premises are located at the northwest corner of the intersection of Natural Bridge Road (an east-west thoroughfare) and Siemers Lane (a north-south street) in the City of St. Louis. Siemers Lane intersects Natural Bridge Road only from the north. The land immediately north of the demised premises was occupied by Lincoln Engineering Corporation. Immediately to the west was a building occupied by Niedringhaus Metal Products Corporation. In 1917 the land demised was burdened with a right of way over a strip of ground 20 feet wide immediately west of Siemers Lane, connecting a four-acre tract belonging to Lincoln Steel & Forge Company with Natural Bridge Road, by grant to that company. At the time the instant lease was entered into, September 2, 1952, the 20-foot easement and the 30-foot lane had been paved over and made into a street 40 feet in width bordered on each side by an abutting 5-foot concrete walk. Plaintiff's predecessor corporation (with which plaintiff subsequently merged) leased the premises for use as an automobile sales lot. Plaintiff's president, E. B. Jones, was familiar with "the piece of property at 5701 Natural Bridge Road," a "used car lot." He understood that the leased premises ran "from Siemers Lane over to the Niedringhaus parking lot." He was bargaining for the property "that had been leased before," "the property numbered 5701 Natural Bridge." The south line of the leased premises was described in the lease as beginning "at the intersection of the West line of Siemers Lane with the North line of Natural Bridge Road," and running thence westwardly along the north line of Natural Bridge Road 173 feet. The east line of the leased premises was described as running "along the West line of Siemers Lane." Upon the execution of the lease, and at a cost of $6,294.49, plaintiff's predecessor purchased from a prior lessee certain personal property located on the premises, made additional improvements to prepare the premises for the conduct of its business in reliance on the lease, took possession under the lease and used the premises as a used car sales lot. About a year after the date of the lease, in order to gain additional entrance and exit to its lot, plaintiff removed a sign which had been located

on a pole on the corner of Siemers and Natural Bridge. This sign directed people north on Siemers Lane to the Lincoln Engineering Corporation. Plaintiff's president, E. B. Jones, testified that his manager, Mr. McCoy, reported to Jones that he received an abusive call from a Mr. Fox stating that the sign had been on property over which Lincoln Engineering had an easement, and threatened "if we did not replace his sign immediately that there would be a fence erected for the entire length of the lot along Siemers Lane." Mr. Jones did not talk to Mr. Fox. Nobody from Lincoln Engineering spoke to Mr. Jones about the sign. Mr. Jones did not know of his own personal knowledge whether anyone from Lincoln Engineering had called about the sign. There was no evidence of the connection, if any, between Mr. Fox and Lincoln Engineering Corporation, or between Lincoln Engineering Corporation and Lincoln Steel & Forge Company. Neither Mr. McCoy nor Mr. Fox testified. There was no other evidence that Lincoln Engineering asserted or had any rights under the easement. There was no evidence of any effort to erect a fence or in any manner to interfere physically with plaintiff's use of the leased premises. Record investigation by plaintiff revealed the existence of the 1917 easement. On June 29, 1954, a law firm at plaintiff's direction sent a letter informing lessors that plaintiff was rescinding the lease because it had discovered an easement "in favor of Lincoln Steel & Forge Company" over the leased premises, and tendering possession to lessors. There was no evidence that lessors accepted this tender, waived the payment of rent or told plaintiff to vacate the premises. Plaintiff continued to hold the property "for lessors," abandoning its use as a sales lot but renting it out as a parking space until December 31, 1954, when by mutual agreement the parties cancelled and surrendered the lease. No rent was paid during the seven-month period from June 1 to December 31, 1954. The monthly payments due under the lease were $310.

Plaintiff-appellant's theory of the case is that the existence of the easement and the threat "by the owner of the easement * * * to challenge plaintiff's right to use the entire demised premises as plaintiff saw fit," interfered with the operation of appellant's business, constituted a substantial defect in the lease and entitled plaintiff to rescind the lease, render up the possession, recover $6,294.49 spent for improvements, and released plaintiff from any further obligation to pay rent.

Plaintiff makes the point that the court erred in sustaining lessors' motion for a directed verdict on plaintiff's petition and on defendants' counterclaim because there was sufficient evidence of the existence of a substantial and material defect in the lease and of appellant's damage to make a submissible case for the consideration of a jury.

■ Plaintiff is relying upon a cause of action for breach of an implied covenant for quiet enjoyment by virtue of a constructive eviction by a stranger holding a title paramount to that of lessors. Pleading and proof of an outstanding paramount title to an easement to the demised premises in a third person materially and substantially impairing the value of the demise and interfering with the use, possession and beneficial enjoyment of the premises would amount to the breach of an implied covenant for quiet enjoyment and would entitle the lessee, upon actual or constructive eviction, to rescind the lease, yield possession to the paramount title, and recover damages from the lessor for breach of covenant. But the evidence disclosed no such situation. No such impairment or interference was shown. The most that plaintiff can make out of the evidence is a single threat to erect a fence unless a sign was replaced. There was no effort to show that the sign deprived plaintiff of the beneficial use of the premises. Legal proceedings were not instituted by the holder of a paramount title seeking to interfere

with plaintiff's possession or use of the property. Mere apprehension that a fence might be constructed on a contingency (failure to replace the sign) would not constitute breach of the implied covenant. The mere existence of an outstanding paramount title is not a breach of the covenant, since this involves no disturbance of the tenant's enjoyment. Tiffany on Landlord & Tenant, Vol. 1, § 79, p. 534. There must be a positive assertion of a paramount title. 21 C.J.S. Covenants § 108, p. 964. A covenant for quiet enjoyment can be broken only by an eviction, actual or constructive. 51 C.J.S. Landlord and Tenant § 323, p. 1009. The reason for this rule is that the covenantee in possession may in fact never be disturbed or evicted therefrom and thus may never suffer damages. Leet v. Gratz, 124 Mo.App. 394, 101 S.W. 696. There was no actual eviction here, nor was there any evidence of acts sufficient to constitute a *constructive* eviction, such as those present in McCleary v. Bratton, Mo.App., 307 S.W. 2d 722. The tenant's beneficial use and enjoyment of the premises must be materially and substantially interfered with. 52 C.J.S. Landlord and Tenant § 455, p. 172. The mere existence of an outstanding title paramount to that of lessor does not constitute an eviction. Renshaw v. Reynolds, 317 Mo. 484, 297 S.W. 374. Furthermore, there can be no constructive eviction while the tenant continues in possession. 52 C.J.S. Landlord and Tenant § 457, p. 173. While plaintiff "tendered" possession it did not actually relinquish possession to lessors. Plaintiff abandoned the use of the lot for the sale of automobiles but conceded its continued use for another purpose: a parking facility. Plaintiff's president admitted that plaintiff charged and collected fees for parking automobiles on the lot during the seven months in question.

◼ The existence of the easement in question did not constitute such a "defect, diminution or incapacity" in the beneficial use of the premises as to justify rescission.

In Hart v. Handlin, 43 Mo. 171, a purchaser of certain real estate sought to rescind the contract of sale for the reason that vendor's title was defective in that a third party had a right of way over a stairway through a building on the premises. The court held that the facts did not make a case for rescission because the substance of the contract could be executed, and the defect was not a "large" one but was one within the range of adequate compensation. The same is true here.

◼ But above and beyond these frailties in plaintiff's case is the mortal lack of proof that Mr. Fox, the person who is supposed to have asserted Lincoln Engineering Corporation's interest in the easement and to have threatened that a fence would be built, was an agent or employee of Lincoln Engineering Corporation authorized to make a hostile assertion of paramount title in that corporation, and the failure to prove that Lincoln Engineering owned the easement and had a right to assert it, by acquisition of the dominant estate or of the easement from Lincoln Steel & Forge Company, the original grantee of the easement. The burden of proof is on the lessee to establish that the paramount title is actually in the person who asserts it. Rawle, Covenants for Title, § 136; Tiffany on Landlord & Tenant, Vol. 1, § 79, p. 534; Allan v. Guaranty Oil Co., 176 Cal. 421, 168 P. 884; Stiger v. Monroe, 109 Ga. 457, 34 S.E. 595.

For these reasons there was no error in directing a verdict for defendants on plaintiff's petition.

◼ Nor did the court err in directing a verdict for defendants on their counterclaim for rent. There was no fact issue for the jury in connection with defendants' counterclaim. The existence and terms of the lease were admitted in plaintiff's "reply" to counterclaim. Plaintiff conceded that it was in possession of the land during the seven-month period in question, and that the

rent was not paid. Holtzman v. Holtzman, Mo.App., 278 S.W.2d 1, cited by plaintiff, prohibiting the direction of a verdict for a party having the burden of proof, is not applicable. The instant case comes within the exception noted in that opinion. Plaintiff's plea to defendants' counterclaim amounted to confession and avoidance. Plaintiff sought excuse from the payment of rent solely on the untenable ground of rescission and tender of possession. The court properly directed a verdict on lessors' counterclaim for the undisputed sum of $2,170.

The judgment of the Circuit Court of St. Louis County should be affirmed and the Commissioner so recommends.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the Circuit Court of St. Louis County is, accordingly, affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.