(118 So. 760)

## ALGER–SULLIVAN LUMBER CO. v. UNION TRUST CO. et al. (3 Div. 813.)

Supreme Court of Alabama. Oct. 25, 1928.

Rehearing Denied Dec. 6, 1928.

Harry T. Smith & Caffey, of Mobile, and Ray Rushton, of Montgomery, for appellant.

Hamilton & Jones, of Evergreen, and D. M. Powell, of Greenville, for appellees.

ANDERSON, C. J. This case has been before the court upon two former appeals. 207 Ala. 138, 92 So. 254; 209 Ala. 432, 96 So. 436. The writer is of the opinion that the former opinions should be modified, or overruled, in so far as they interpret the limitation of the warranty embraced in the deed as well as the declaration of the purpose of the bill as set forth in the opinion on the second appeal. My views were presented to my brothers, who preferred following the former opinions, and this cause has been considered and the opinion prepared in conformity with said former opinions. As the views of the writer were not accepted by the majority of the court, it will serve no useful purpose to incorporate them in this opinion. Moreover, there would be no radical change in the result, should the case be treated under my theory of the meaning of the warranty and the limitation thereto.

■ As we understand from the opinion on the second appeal, the bill, as amended and there considered, was treated as for a rescission as to the land for which it was claimed a total failure of the title and for compensation or damages for incumbrances or defects in the title short of a total failure, and this was the theory upon which the case was tried in the circuit court. As to the former, there has been no ouster or loss of any of the land or a total failure of title shown when the bill was filed, which was a condition precedent to a rescission, conceding that the proper demand was made and was not subsequently waived, which is, at present, unnecessary to decide.

■ As to the second proposition, if the complainant's only remedy was for a breach of the covenant as for defects not fatal to the title and for compensation for the difference in the value of the title bought and the one received, there is no proof that the defects have been at all detrimental to the complainant; it has enjoyed the use and occupation of the land for 15 years, has removed the bulk of the timber therefrom, and to all intent and purpose will never be disturbed, in the use and enjoyment of the fee. In other words, while there was a technical breach of the warranty, and the subsequent perfection of the title by use and occupation did not condone the breach, this fact should be and was considered by the trial court in arriving at the damages, and which was found to be nominal, and as to this we cannot put the circuit court in error.

■ As the limitation to the covenant deals with the land as to which there was a total failure of title, and provides for a rescission and restoration of the purchase price, it was incumbent upon the complainant to prove a failure of title as a condition to relief and which it has failed to do. There has been no eviction as to any of the land, and therefore no breach of the general warranty for quiet enjoyment. Oliver v. Bush, 125 Ala. 534, 27 So. 923.

■■ As to the clouds or incumbrances set forth, whether coming within a warranty of seisin or under a warranty against incumbrances, there may have been shown a technical breach. Maupin on Marketable Title to Real Estate, §§ 109 and 122.

"The covenant of seisin is broken as soon as made, and the covenantee's right of action therein complete, if the covenantor have not, at the time of the covenant, the title therein described. It is obvious, however, that if the covenantee remain in the undisturbed enjoyment and possession of the estate he has suffered no damage from the breach. Possibly he may never be disturbed in the possession, for the real owner may never assert his rights, or they may become barred by the statute of limitations. Accordingly, the rule has been established by numerous decisions that the covenantee can recover no more than nominal damages for a breach of the covenant of seisin,

452

so long as he remains in the undisturbed possession of the estate." Maupin on Marketable, Title to Real Estate, § 116, and many cases cited in note 77, p. 292.

█ If the covenantee's title be perfected by the statute of limitations, he can recover only nominal damages for a breach of the covenant of seisin. Wilson v. Forbes, 13 N. C. 30.

█ On the other hand, should the defects complained of such as incumbrances and clouds come under the head of a warranty against incumbrances, the same rule as to a technical breach and the measure of damages prevails.

"A covenant against incumbrances, if broken at all, is broken as soon as made. The mere existence of an incumbrance, if it be capable of enforcement, is a breach of the covenant without regard to the probability of its enforcement, though as we shall hereafter see, the plaintiff can recover no more than nominal damages if he has suffered no inconvenience or loss on account of the incumbrances."

"If the breach of the covenant against incumbrances consist in the existence of a pecuniary incumbrance upon the estate the covenantee can recover no more than nominal damages if he has not been disturbed in the enjoyment of the estate or has paid nothing or sustained no loss on account of the incumbrance." Maupin, § 129, and cases cited under note 65.

This rule, however, at law does not prevent a court of equity from providing substantial damages which a covenantee must incur in paying off an incumbrance in the future, meaning, of course, valid and subsisting ones, and not such as may be barred by the statute of limitations or laches. The proof fails to show that any of the so-called incumbrances or defects complained of have caused the complainant any loss in the use and enjoyment of the estate. On the other hand, it shows most conclusively that they will not in the future deprive the complainant of the use and enjoyment of the land, and we agree with the trial court that the complainant was not entitled to recover more than nominal damages.

█ It is, of course, self-evident that a complete record title to land is better and more advantageous than one which, though good, will have to be established dehors the record; but we do not think the parties contemplated a perfect record title, or that the warranty embraces such a title. This was a very large body of land, valuable chiefly for the timber, and it is a matter of common knowledge that during the early history, or perhaps the first half of the life, of the state, the pine lands or forests were considered of little value as compared with what was regarded as the best and most valuable lands in other sections of the state, and the owners or claimants of these pine or wild lands did not register their muniments of title as systematically as was done in other sections, Moreover, the contract and the deed clearly indicate that the grantor did not have, and did not intend, to warrant, a perfect record title, as provision was made and conditions mentioned in the event of defects in the title. Hence there was no occasion for the expert testimony as to the difference in value between a perfect record title and one perhaps good, though clouded or incomplete.

█ It is next urged by the appellant's counsel that the balance of the purchase money due the appellee should not bear interest between the maturity of the bonds and the rendition of the decree; that the delay in the payment was through no fault of appellant, as the title was clouded or incumbered when the bill was filed, and it was not until the rendition of the decree that it was ascertained that appellant could suffer no damages from the existence of such defects in the title. There might be some force in this contention, did it not appear that, during this interim and all time since the purchase of the land, the appellant has enjoyed the undisturbed use and occupation of same.

In the case of Kitchen v. Grice, 212 Ala. 674, 103 So. 880, cited by appellant, the money was not to be paid until the vendor made the purchaser a good title, and, of course, the debt did not bear interest until it became due. The other cases cited deal generally with specific performance, and the leading, one, Lowther Oil Co. v. Gunnell, 184 Ky. 587, 212 S. W. 593, merely affirms the rule, as laid down in Cyc., that a demand does not bear interest because of a delay in the payment, due to the fault of the payee, and not the debtor, unless the debtor is in possession of the property.

█ "Under established rules a note or bond made payable at a particular place or which is expressly made with reference to the laws of a particular State is governed in respect to its obligation as to interest by the law of the place so stipulated as the place of performance." Hayes v. Southern H. B. & L. Ass'n, 124 Ala. 663, 26 So. 527, 82 Am. St. Rep. 216, and cases cited; Farmers' Ass'n v. Kent, 131 Ala. 246, 30 So. 874; McGarry v. Nicklin, 110 Ala. 559, 17 So. 726, 55 Am. St. Rep. 40.

The bonds in question were made payable in the state of Michigan, and there is nothing in them, or the entire contract or transaction, to indicate that they were to be governed, as to interest, by the laws of this state, or to show that the laws of any state other than Michigan was to control the rate of interest the bonds should bear after maturity. On the other hand, if permitted to take judicial knowledge of the Michigan rate of interest, it would appear that the parties had in mind said rate.

█ While there may be some conflict in the authorities, the rule in this state is that, notwithstanding the contract rate before

maturity, the legal rate obtains after maturity. Zimmern v. Standard Motor Co., 205 Ala. 580, 88 So. 743. There was no proof of the Michigan rate of interest, and therefore no interest should have been allowed. Camp v. Randle Co., 81 Ala. 240, 2 So. 287. Section 7688 of the Code of 1923 makes the rate of interest of the states, as published in the legislative acts, presumptive evidence of such interest; but that does not authorize the courts to take judicial knowledge of the rate. Camp v. Randle Co., supra.

The fact that the bonds are secured by a mortgage on property in Alabama does not convert them into an obligation to bear interest at the Alabama rate after maturity. United States Savings Co. v. Beckley, 137 Ala. 119, 33 So. 934, 62 L. R. A. 33, 97 Am. St. Rep. 19; Id., 147 Ala. 195, 40 So. 655.

As this case must be reversed as to the rate of interest allowed by the trial court on the bonds after maturity, it is remanded, in order that the Michigan rate may be proven. Section 6149, Code of 1923.

The decree of the circuit court is affirmed in all respects, except as to the allowance of interest, and, as to this, the decree is reversed, and the cause is remanded.

Affirmed in part, and reversed and remanded. Cost of appeal to be divided equally between the appellant and appellees.

GARDNER, THOMAS, BOULDIN, and FOSTER, JJ., concur.

SAYRE, J., concurs in all except as to the taxation of cost, and thinks all the cost of appeal should be taxed against the appellant.

BROWN, J., concurs in all except the remandment of the cause. He thinks the decree allowing interest from the maturity of the bonds up to the time of the decree should be reversed, and one here rendered, disallowing interest for that period; this, on the authority of Insurance Co. v. Forcheimer, 86 Ala. 541, 5 So. 870.

Upon Rehearing.

ANDERSON, C. J. It is suggested upon rehearing that the court has not treated the assignment of error as to the action of the trial court in dissolving the injunction. True, this question was inadvertently overlooked when dealing with the more important ones, but a decision of same can serve no useful purpose, except to determine whether or not the respondent has a cause of action upon the injunction bond, and this has been made a moot question by the appellee by an express waiver of any damages or right to sue therefor growing out of the issuance of the injunction. The brief for the appellee says:

"In order, however, to relieve this case from any complications as to the dissolution of the injunction, appellees hereby waive any rights they may have to bring suit on the injunction bond given by appellant and release appellant from any liability arising from any breach of the injunction bond by appellant, hereby consenting that this may be entered of record by the court."

The court is still of the opinion that the appellee is entitled to interest, as outlined in the foregoing opinion.

The rehearing is denied.