152 So. 462

## PERSONAL FINANCE CO. OF COLUMBUS, GA., v. GIBSON et al.

### 5 Div. 894.

Court of Appeals of Alabama.
Oct. 31, 1933.

Rehearing Denied Nov. 14, 1933.

W. H. Young, Jr., and Jas. O. McGehee, both of Columbus, Ga., Roy L. Smith, of Phenix City, and Denson & Denson, of Opelika, for appellant.

J. B. Hicks and W. J. Bird, both of Phenix City, for appellees.

**SAMFORD, Judge.**

It is with sincere regret that the writer, with whom RICE, J., concurs, cannot agree to the conclusions reached by BRICKEN, P. J., in the very persuasive opinion prepared by him in this case.

The statement of the case is fully and fairly stated by BRICKEN, P. J., in the opinion prepared by him. As to the statement of the case therein, we agree, but the conclusions of law therein stated are not in accord with the law as we find it.

■ It being admitted that the contract for the payment of interest was a binding contract between the parties under the laws of Georgia where the contract was made and to be performed, the same remained a binding contract everywhere and could be enforced as such in the courts of this state. There are some few decisions holding to a contrary view, but in this state the rule is settled, so far as this court is concerned, that: "If the contract is not usurious where made and to be performed, it will be enforced by the courts of this state, notwithstanding it would have offended the laws of this state against usury, had it been made here." The foregoing is quoted from the opinion in United States Savings & Loan Company v. Beckley, 137 Ala. 119, at page 122, 33 So. 934, 62 L. R. A. 33, 97 Am. St. Rep. 19. This decision is based upon the texts in Story on Conflict of Law (8th Ed.) p. 397. This case has never to our knowledge been qualified or overruled; on the contrary, its correctness is recognized in Alger-Sullivan Lbr. Co. v. U. T. Co., 218 Ala. 448–453, 118 So. 760.

In Watkins Co. v. Hill, 214 Ala. 507, 108 So. 244, the same rule is stated with the citation of many authorities.

We are familiar with the decision in Western Union Tel. Co. v. Hill, 163 Ala. 18, 50 So. 248, 253, 23 L. R. A. (N. S.) 648, 19 Ann. Cas. 1058, in which Mayfield, J., speaking for the court, said: "Any provision found in the law of another state authorizing the making of a contract which is obnoxious to the laws of Alabama, as to such obnoxious provisions the contract will not be enforced in Alabama." In that case the breach occurred in Alabama and to that extent, at least, may be said to differ from the case at bar.

■■ The general rule, as stated, is that a contract good in a foreign state will be enforced in this state, unless contrary to the public policy of this state. 13 Corpus Juris, 255. And it is contended, and the opinion of the Presiding Judge persuasively urges, that the contract in the instant case is contrary to the public policy of this state, but the authorities are to the contrary. "Contracts valid where made, do not offend the public policy of a forum, even though they provide for a rate of interest which would be usurious with penalizing consequences, even to the extent of forfeiture of principle and interest as to such a contract if made in the law of the forum." 5 R. C. L. p. 981 (62) and note 13.

There is some diversity of opinion as to contracts made in one state to be wholly or partially performed in another, as was the case in W. U. Tel. Co. v. Hill, 163 Ala. 19, 50 So. 248, 23 L. R. A. (N. S.) 648, 19 Ann. Cas. 1058; but where the locus contractus and the locus solutianis is the same, if the contract is legal where made it will be enforced by the courts of this state; notwithstanding it would have offended the laws against usury in this state if it had been made here. U. S. Savings & Loan Co. v. Beckley, supra. Finally, the Legislature has the right and power to declare the public policy of this state regarding comity between states and to forever put at rest questions similar to the one raised here. In 1907 it enacted a statute which has become section 5681 of the Code of 1923 as follows: "Whenever, either by common law or the statutes of another state, a cause of action, either upon contract, or in tort, has arisen in such other state against any person or corporation, such cause of action shall be enforcible in the courts of this state, in any county in which jurisdiction of the defendant can be legally obtained in the same manner in which jurisdiction could have been obtained if the cause of action had arisen in this state." This statute has been recognized and cited by this court in Mobley, Supt. of Banks, etc., v. Smith, 24 Ala. App. 553, 138 So. 551, and by our Supreme Court in Dol-

lahite-Levy Co. v. Overton, 223 Ala. 12, 133 So. 903.

We see no escape from the conclusion that the trial court erred in the judgment rendered by it, and for this error the judgment is reversed and the cause is remanded.

Reversed and remanded.

BRICKEN, Presiding Judge (dissenting).

Upon submission of this appeal, the record was assigned to the writer, and the following opinion was prepared as and for the opinion of the court. However, my associates disagree with the views I have expressed, as well as the conclusion reached. The opinion of the majority prepared by SAMFORD, J., becomes the opinion of the court; hence the following opinion is merely a dissent and expresses the views of the writer.

This case was tried upon an agreed statement of facts.

The Small Loan Law of the state of Georgia authorizes licensed lenders of money to make loans in the sum of $300 or less at a rate of interest not exceeding 3½ per cent. per month on the balance due. Acting under that law, the Personal Finance Company of Columbus, Ga., a corporation licensed to lend money, domiciled in Columbus, Ga., made a loan of $300 to Mrs. Enzie E. Gibson and O. C. Gibson. The loan was evidenced by a promissory note, in which the makers agreed to pay the "Personal Finance Company of Columbus, Georgia, at its office in Columbus, Ga., the sum of $300.00 in 20 monthly installments of $15.00 each," together with interest on the principal sum at the rate of 3½ per cent. per month, the same sum together with interest as aforesaid to be computed on the unpaid balance of said principal sum, on the same day of each consecutive month thereafter until said principal sum with interest at said rate on all unpaid balance thereof shall have been paid. The Gibsons were residents of Lee county, Ala., at the time the transaction was entered into, and to secure the payment of said note they executed a chattel mortgage on certain household furniture in Alabama, which was duly recorded in Lee county, Ala., as provided by law. Default was made in the payment of some of the installments referred to in the note, and the appellant instituted an action of detinue in the circuit court of Lee county, Ala., to recover the personal property described in the mortgage. The defendants appeared, and, as is provided in section 7400 of the Code 1923, suggested that plaintiff's claim was based on the mortgage and asked that the amount of the mortgage debt be ascertained; and also pleaded, as is provided by section 7402 of the Code 1923, that the indebtedness secured by the mortgage was a usurious transaction. A jury was waived and the case submitted to the court for decision.

It appears without dispute that if the rate of interest provided by the Small Loan Law of Georgia (Code Ga. 1926, § 1770(61) et seq.) can be recovered in the courts of this state, then the court below should have ascertained that the amount of the indebtedness was $257.94, and that appellant was entitled to a judgment for that amount in its favor. If the interest provided by the Georgia law is not recoverable in the state, then the balance on the indebtedness amounted to $60.94. The court below was of the opinion that section 8567 of the Code 1923 controlled the case and refused to allow any interest, charged back and deducted from the principal all interest which had been paid, and ascertained that the balance of the debt was $60.94. The court rendered a judgment for plaintiff for the property sued for, with the provision that if the amount of the balance due on the debt, as ascertained by the court, was paid within thirty days, no execution or other process would issue on the judgment.

Appellant here, plaintiff in the court below, filed a motion for new trial, which was overruled, exception reserved, and an appeal was taken to this court from the judgment of the court and order overruling plaintiff's motion for a new trial.

It is conceded that the contract between the parties is valid and enforceable under the laws of the state of Georgia. The sole question for decision is whether or not the defense of usury was available to the defendants; or, stated otherwise, the only proposition to be here decided is whether the courts of Alabama will enforce the provisions of the Georgia contract respecting interest.

The appellant contends that where a contract was made in one state to be performed in another, the parties may contract for the payment of the highest rate of interest allowed by either without offending against the usury laws of the other. In support of that contention the appellant cites U. S. Savings & Loan Co. v. Beckley, 137 Ala. 119, 33 So. 934, 62 L. R. A. 33, 97 Am. St. Rep. 19; Hayes v. Southern Home Bldg. & Loan Ass'n, 124 Ala. 663, 26 So. 527, 82 Am. St. Rep. 216; Jackson v. Chemical National Bank, 215 Ala. 538, 112 So. 105; Alger-Sullivan Lbr. Co. v. Union Trust Co., 218 Ala. 448, 118 So. 760; Pioneer Savings & Loan Co. v. Nonnemacher, 127 Ala. 521, 30 So. 79.

The appellee contends that the Georgia contract, although to be performed in the state of Georgia, is a violation of positive mandates of our statute and will not be enforced by the courts of this state; citing, among other authorities, Galliher v. State Mutual Life Ins. Co., 150 Ala. 543, 43 So. 833, 124 Am. St. Rep. 83.

Section 8567 of the Alabama Code 1923 provides as follows: "All contracts for the payment of interest upon the loan or forbear-

ance of goods, money, things in action, or upon any contract whatever, at a higher rate than is prescribed in this chapter, are usurious, and cannot be enforced either at law or in equity, except as to the principal. Nor shall the borrower of money at a usurious rate of interest ever in any case in law or equity be required to pay more than the principal sum borrowed, and if any interest has been paid the same must be deducted from the principal and judgment rendered for the balance only."

It is my opinion that this section shows on its face that the Legislature of this state, in the rightful exercise of the police power, has unmistakably declared that it is contrary to the public policy of this state and detrimental to the public welfare to require citizens of this state to pay more than 8 per cent. interest. McCormack v. Fallier, 223 Ala. 80, 134 So. 471.

As I read this statute, it declares all contracts, meaning thereby Alabama contracts, for the payment of interest in excess of 8 per cent. per annum unenforceable, either in law or in equity, except as to the principal, but it does not stop there. "Nor shall the borrower of money at a usurious rate of interest *ever in any case* in law or equity be required to pay more than the principal sum borrowed," is a part of the sweeping and comprehensive language used in the second sentence. This part of the statute deals with the power of the court to render a judgment in a case of this character that includes interest, at any rate foreign or domestic, and in effect takes away what power the court might otherwise exercise, but for the statute quoted. I think this is as it should be. No court should allow itself to be used when its judgment would consummate an act forbidden by law. If it be said that interest at the rate of 3½ per cent. per month is not forbidden by law in Georgia, the answer is that *its collection* in Alabama is forbidden by the Constitution of the state, in the case of banks, section 104, subsection 13; and in the case of individuals by the statute just referred to.

I am unwilling to affirm the authority in a court in this state to require one of its citizens to pay 42 per cent. interest on a small loan *simply* because the borrower resided in a community close to the state line and went across the line to consummate the loan. There should be a limit somewhere. According to the standard fixed by the law of this state, 42 per cent. is too much.

There is another principal of law that comes up for consideration, and that is, generally speaking, a contract, even though valid where made, will not be enforced by the courts of a state where its enforcement would involve the court in the violation of the statutes of the state of its creation.

As a general rule, a contract, good where made, is good everywhere; but it by no means follows that it is *enforceable* everywhere. On the contrary, a contract may be valid everywhere, because valid where made, and yet not be enforceable everywhere. 13 C. J. p. 254, § 23; Emery v. Burbank, 163 Mass. 326, 39 N. E. 1026, 28 L. R. A. 57, 47 Am. St. Rep. 456.

The idea is well expressed by the New Jersey court in Flag v. Baldwin, 38 N. J. Eq. 219, 48 Am. Rep. 308, in the following language: "An almost complete agreement exists * * * that a contract valid where made will not be enforced by the courts of another country, if, in doing so, they must violate the plain public policy of the country whose jurisdiction is invoked to enforce it, or if its enforcement would be injurious to the interest or conflict with the operation of the public laws of that country." Story's Conflict of Laws, sec. 245; Addison Cont. section 241; Forbes v. Cochrane, B. & C. 448; Cray v. Levy, 16 C. B. (N. S.) 73; Hope v. Hope, 8 De. G. M. & G. 731; 2 Kent Comm. 475; Bank of Augusta v. Earle, 13 Pet. 519, 10 L. Ed. 274; Ogden v. Saunders, 12 Wheat. 213, 6 L. Ed. 606; Blanchard v. Russell, 13 Mass. 1, 7 Am. Dec. 106.

In Bank of Augusta v. Earle, 13 Pet. 519, 589, 10 L. Ed. 274, I find the rule announced by the highest authority in this country: "The cases of contracts made in a foreign country are familiar examples; and courts of justice have always expounded and executed them, according to the laws of the place in which they were made; *provided that law was not repugnant to the laws or policy of their own country.* The comity thus extended to other nations, is no impeachment of sovereignty. It is the voluntary act of the nation by which it is offered; and is inadmissible, when contrary to its policy, or prejudicial to its interests. But it contributes so largely to promote justice between individuals, and to produce a friendly intercourse between the sovereignties to which they belong, that courts of justice have continually acted upon it, as a part of the voluntary law of nations. It is truly said, in Story's Conflict of Laws 37, that 'In the silence of any positive rule, affirming or denying, or restraining the operation of foreign laws, courts of justice presume the tacit *adoption of them by their own government,* unless they are repugnant to its policy, or prejudicial to its interests. It is not the comity of the courts, but the comity of the nation, which is administered, and ascertained in the same way, and guided by the same reasoning by which all other principles of municipal law are ascertained and guided.' "

Again, in Galliher v. State Mutual Life Ins. Co., 150 Ala. at page 545, 43 So. 833, 834, 124 Am. St. Rep. 83, I find our own Supreme Court saying: "Conceding that the policy, which is the foundation of this suit, is a Geor-

gia contract, and that the clause shortening the statute of limitations would be binding in the state of Georgia, it is expressly prohibited by section 2802 of the Code of 1896. In the well-considered case of Jones v. Jones, 18 Ala. 248, wherein the case of Goodman v. Munks, 8 Port. 84, was overruled, the court, through Dargan, C. J., said: 'It is a principle of law, admitted by all courts, that the lex loci contractus must govern as to the validity, interpretation, and construction of the contract; but the remedy to enforce it, or to recover damages for its breach, must be pursued according to the law of the forum-where the suit is brought. Peake v. Yeldell, 17 Ala. 636; Carnegie v. Morrison, 2 Metc. (Mass.) 381; Le Roy v. Crowninshield, 2 Mason (U. S.) 157, Fed. Cas. No. 8,269; Story, Con. of Laws, §§ 275, 276.' "

In the Galliher Case, supra, Justice Anderson (now our Chief Justice), for the court, went further and said: "All remedies on contracts, whether made in or out of this state, must be governed by our own laws, when the suit is brought here, without regard to the remedies afforded by the laws of other countries."

In Western Union Telegraph Company v. Hill, 163 Ala. 18, 34, 50 So. 248, 253, 23 L. R. A. (N. S.) 648, 19 Ann. Cas. 1058, it is said: "In entering into contracts, if nothing appear to the contrary, the law of the place silently becomes a part of the contract and determines the measure of the rights it secures, but adds: 'This right of comity, however, has limitations. No state will enforce contracts or redress grievances entered into or suffered in another state, if the enforcement involve a breach of legal or moral right as maintained in the law of the forum.' It is likewise a fundamental principle that the laws of the state can have no binding force proprio vigore outside of the territorial limits and jurisdiction of the state enacting them. Consequently any provision found in the law of another state authorizing the making of a contract which is obnoxious to the laws of Alabama, as to such obnoxious provisions the contract will not be enforced in Alabama; but it will be enforced in Alabama only to the extent that it is lawful in Alabama."

The courts of the state of Alabama are instructed to carry into effect the laws of the state and nation and they cannot be auxiliaries to the violation of those laws. The public policy of this state is to be found in its statutes, and when the Legislature has spoken directly on a particular subject, on which it has constitutional power to legislate, public policy in such case is what the statute enacts. U. S. v. Trans-Missouri Freight Ass'n, 166 U. S. 290, 17 S. Ct. 540, 41 L. Ed. 1007.

The authorities relied on by appellant and noted above do not conflict with the conclusions herein reached. They were either decided before the statute, which in my opinion controls in this case, or the principles to which I have referred apparently were not involved. In the absence of the statute, those cases might control; but they do not in my opinion demonstrate that an Alabama court must violate the law of this state in order to give effect to a Georgia contract.

It is my opinion that the provision in the Georgia contract respecting the rate of interest is unenforceable in the courts of Alabama and the judgment of the trial court should be affirmed.