ADAMS, Justice.
These appeals are taken from the Dallas County Circuit Court’s resolution of various cross-claims of the defendants in a case previously appealed to this court, namely, Ames v. Pardue, 389 So.2d 927 (Ala.1980). The facts of this case are as follows:
In 1977, appellants John Ames and Mae Ames contacted Central Bank of Birmingham about the possibility of purchasing a parcel of land mortgaged by J. Bruce Par-due and Mary Jane Pardue. Central Bank, the mortgagee, had advertised a foreclosure sale for the property. In the course of negotiating the financing of the purchase price of the land, Central Bank agreed to the Ameses’ payment of $150,-000.00 in cash and the execution of a purchase money mortgage. Central Bank does not contest that its officials were aware that the trust to be created and the Ameses were to pay the mortgage indebtedness by subdividing the land and selling parcels, by farming and timbering, and by refinancing the indebtedness through the Federal Land Bank.
In July 1977, the Ameses established the trust, the res of which was to be the Par-due land, for the benefit of their minor children. Central Bank and Ruth Binford were named as trustees. In August, Central Bank, having foreclosed the Pardues’ mortgage, executed a deed to the property in favor of the trust.
The trust assumed the Ameses’ obligation for the $675,000.00 purchase price; however, the obligation was personally guaranteed by the Ameses, who made cash payment of $150,000.00 to the trust, which, in turn, paid Central Bank in order to reduce its principal indebtedness to $525,-000.00. In exchange for a portion of this payment and the execution by Mae Ames of an unsecured note in the amount of $3,500.00, the trust conveyed 50 acres of the Pardue land to Mae Ames.
The trust also conveyed 486 acres of the Pardue property to the Ameses. In exchange, they executed a promissory note in the principal amount of $106,550.00. Thereafter, the Ameses took possession of the land, and lived thereon.
The Ameses and the trust made payments on all rental and note obligations until January 5, 1978. On that date, the Pardues filed suit attacking the validity of Central Bank’s foreclosure sale. Subsequently, the trial judge orally enjoined the Ameses from making additional improvement on the land, and from removing timber therefrom. Central Bank and the trust do not contest the fact that the suit filed by the Pardues, and the subsequent actions taken by the trial court, including its invalidation of the foreclosure sale, effectively prevented the Ameses from utilizing the land to pay their debt to the trust, and, ultimately, the trust’s debt to Central Bank.
The Ameses assert that Central Bank agreed that no interest would accrue on the trust’s indebtedness until the litigation initiated by the Pardues was concluded. Central Bank claims that it only acquiesced to a “moratorium” on the collection of the interest accruing during the pendency of the litigation. In any event, Central Bank did not again seek payment on the indebtedness until after this court had reinstated *1216 the foreclosure sale and denied the Par-dues’ application for rehearing. See Ames v. Pardue, supra. At that time, Central Bank demanded payment of all the interest alleged to have accrued on the trust's indebtedness during the Pardue litigation.
In response to Central Bank’s demand for payment, the Ameses sought purchasers for the land. They received two offers: one for the purchase of the 486 acres that they had purchased from the trust and another for the land that John Ames was renting from the trust. One sale was completed, and the proceeds were used first to retire the principal indebtedness of the trust and then to pay interest agreed to have accrued, with the balance of the proceeds placed in escrow. The other sale was never consummated.
Following the trial of this case, the trial court denied all relief requested by the Ameses and the trust, including the trust’s claim against the Ameses for rent, which the court denied due to “impossibility of performance.” In addition, the trial court granted Central Bank’s claim for interest on the trust’s obligation during the penden-cy of the Pardue litigation; however, it also ordered “the Trustee, iri its corporate entity” (Central Bank) to pay the trust’s attorneys’ fees for its defense of the Pardues’ challenge. The Ameses, the trust, and Central Bank appeal.
The following issues have been raised by the parties:
1. Did the trial court err in denying the Ameses’ claims of fraudulent misrepresentation against Central Bank?
2. Did the trial court err in denying the claims of the trustees and the Ames-es against Central Bank for attorneys’ fees and damages resulting from their defense of the Pardues’ attack on the foreclosure sale?
3. Did the trial court err in holding that interest on the trust’s promissory note and mortgage to Central Bank continued to accrue during the pendency of the Pardue litigation?
4. Did the trial court err in ordering the application of a partial payment first to the principal indebtedness of the trust, and then to accrued interest?
5.Did the trial court err in assessing attorney’s fees against the “Trustee in its corporate entity”?
I.
In Ames v. Pardue, we concluded that John Ames had relied on Central Bank’s estimation of the balance of the Pardues’ mortgage indebtedness (just prior to the foreclosure sale) as $675,000.00, but that he “ha[d] not been injured as a result.” 389 So.2d at 931. On remand, the Ameses continued to claim that they were damaged in the sum of $75,000.00 as the result of the bank’s misrepresentation. The trial court concluded, as we did, that the Ameses were not entitled to prevail on their claim of fraudulent misrepresentation against the bank. John Ames’s conflicting testimony concerning his negotiations with Central Bank prior to his decision to bid $675,000.00 for the Pardue land, and the testimony of Central Bank officials to the effect that the bank did not reach a decision on an amount to bid for the land until immediately prior to the sale, required the trial court to make a determination of fact as to whether the bank, at any time prior to the sale, made actionable misrepresentations of the amount it was intending to bid on the property. We think the trial court properly resolved this dispute on the basis of credible testimony.
II, III and IV
The general rule of law applicable to issues two and three, as stated above, was enunciated by this court in Goulding Fertilizer Co. v. Blanchard, 178 Ala. 298, 59 So. 485 (1912):
Sales by a trustee or mortgagee under power granted are sometimes characterized as quasi judicial. This, we apprehend, only in the same sense that they operate to cut off the right of redemption as effectually as would a sale under judicial decree. So it is generally declared that the rule of caveat emptor applies to such sales, but certainly not in the same *1217 sense or degree as to judicial sales proper. Our reports teem with cases in which purchasers at power sales have been treated as bona fide purchasers for value, and protected against secret claims and equities, whether existing in favor of third persons against the mortgagor, or in favor of the mortgagor against the mortgagee.—[Citations omitted.] The rule of caveat emptor in such eases means no more than that the mortgagee or trustee who makes the sale, as agent for the mortgagor, is not responsible for any failure of title whether due to irregularities in the sale or want of title in the mortgagor, and that the purchaser cannot urge such failure to defeat his absolute liability to pay the purchase price.
178 Ala. at 305-306, 59 So. at 487-488. Central Bank argues that this rule both precludes the recovery of attorneys’ fees and damages from it by the Ameses and the trust for their participation in the defense of the Pardues’ attack on the foreclosure sale, and also mandates the Ameses’ payment of the purchase price together with interest accrued thereon. Central Bank further contends that the Ameses and the trust could have avoided application of this rule only by providing against interference with their intended use of the land in their agreement with the bank. See Alpine Construction Co. v. Water Works Board, 377 So.2d 954, 956 (Ala.1979).
We think that application of the above-quoted general rule to this case would be inequitable insofar as the bank in its deed to the trust expressly warranted that the foreclosure sale was “duly and properly conducted.” Having given the trustees such a warranty, we think it was incumbent upon Central Bank to defend its actions in selling the Pardue land under its power of sale (in the mortgage given by the Pardues). Central Bank did defend the propriety of the foreclosure sale, and eventually was successful in persuading this court to uphold its validity. We hold that it would be inequitable to require Central Bank to pay the attorneys’ fees of the trust and the Ameses that were incurred in defense of the same foreclosure sale.[1]
We also think that the bank’s warranty suspended the “absolute liability” of the trust (and of the Ameses, as guarantors) to pay the purchase price and interest thereon during the period when the Par-dues’ action interfered with the anticipated use of the land by the trust and the Ameses. See Alger-Sullivan Lumber Co. v. Union Trust Co., 218 Ala. 448, 118 So. 760 (1928). Central Bank’s warranty to the trust prevented the accrual of interest from the time the Pardues filed suit until this court reversed the trial court’s decree that the foreclosure sale was invalid.[2]
Insofar as we hold that no interest accrued on the trust’s obligation to Central Bank during the pendency of the Pardues’ suit, we think the trial court’s order that the proceeds from the sale of a portion of the land be used to retire the principal indebtedness of the trust and also interest agreed to have accrued thereon should be left intact. The proceeds of the sale were not exhausted by the payment of the principal indebtedness and the interest agreed to have accrued thereon. The remaining proceeds were placed in escrow pending a determination of the trust’s and the Ameses’ liability for interest during the Pardue litigation. Therefore, we think the trial court’s failure to observe the requirement of Code 1975, § 8-8-11, namely, that “[w]hen partial payments are made, the interest due is first to be paid and the balance applied to the payment of the principal” (emphasis added), resulted in no reversible error.
V.
The trial court ordered that “the trust, the Ameses, and Central Bank each *1218 pay their or its attorneys’ fees expended in defense of the title to [the Pardue] property.” (Emphasis added.) Yet, the court further ordered “the Trustee, in its corporate entity” to pay the fees of the attorneys who represented the trust during the pend-ency of the Pardue action and later against Central Bank alone. We think that the former order was correct, but that the latter order was erroneous.
In the recent case of Graddick v. First Farmers and Merchants National Bank of Troy, 453 So.2d 1305 (Ala.1984), this court construed Code 1975, § 19-3-281, which provides for the payment of expenses, including attorneys’ fees, incurred in connection with a trust estate. The section provides as follows:
(a) All ordinary expenses incurred in connection with the trust estate or with its administration and management, including regularly recurring taxes assessed against any portion of the principal, water rates, premiums on insurance taken upon the estates of both tenant and remainderman, interest on mortgages on the principal, ordinary repairs, trustees’ compensation except commissions directed to be paid out of principal, compensation of assistants, and court costs and attorneys’ and other fees on regular accountings, shall be paid out of income. But such expenses where incurred in disposing of, or as carrying charges on, unproductive estate as defined in section 19-3-280 shall be paid out of principal, subject to the provisions of subdivision (2) of section 19-3-280.
(b) All other expenses, including trustees’ commissions directed to be paid out of principal, cost of investing or reinvesting principal, attorneys’ fees and other costs incurred in maintaining or defending any action to protect the trust or the property or assure the title thereof, unless due to the fault or cause of the tenant, and costs of, or assessments for, improvements to property forming part of the principal, shall be paid out of principal. Any tax levied by any authority, federal, state or foreign, upon profit or gain defined as principal under the terms of subsection (b) of section 19-3-272 shall be paid out of principal, notwithstanding said tax may be denominated a tax upon income by the taxing authority.
(Emphasis added.) In Graddick, we interpreted the above-emphasized word “action” in subsection (b) to mean a “court proceeding,” which the Pardues’ claim clearly entailed. We now construe the emphasized phrase to mandate the payment of the attorneys’ fees incurred by the trust in defending the Pardues’ attack on its title from the trust principal. Therefore, the award of attorneys’ fee against “the Trustee, in its corporate entity” is vacated.
AFFIRMED IN PART; REVERSED IN PART; JUDGMENT FOR ATTORNEYS’ FEES AGAINST “THE TRUSTEE, IN ITS CORPORATE ENTITY” VACATED; AND THE CAUSE REMANDED.
TORBERT, C.J., and FAULKNER, AL-MON and EMBRY, JJ., concur.

. Our holding accords with the trial court's order that "the trust, the Ameses, and Central Bank each pay their or its attorneys’ fees expended in defense of the title to [the Pardue] land.” See Part V, infra.

. Central Bank’s own loan officer testified that ”[i]f our foreclosure were invalid our loan to the Ameses was invalid [or] nonexistent.”