These appeals are from an order (1) granting summary judgment in favor of *Page 623 
Norman H. Clark on his claim for breach of warranty of title; (2) granting summary judgment in favor of Cypress Shores Development Company, Inc. ("Cypress Shores") on Clark's claim for breach of contract; and (3) granting the alternative motion of Cypress Shores for summary judgment as to the issue of damages.
The pertinent facts were stipulated to by the parties and set out comprehensively by the trial court in its findings of fact, which we adopt herewith:
"Charles Shaw, a real estate agent acting for Norman Clark, contacted Cypress Shores Development about purchasing Lots 46 and 47 of Unit Four, Cypress Shores Subdivision in February 1980.
"An offer was made to purchase the same for $21,000, and was not accepted by Cypress Shores.
"The offer contained language requiring that the covenants be removed.
"A later offer was made for $22,500 and on June 20, 1980, Cypress Shores accepted the same. The condition of the purchase agreement was 'the owners having restrictive covenants removed so that the property may be used for commercial purposes and such document for removal to be recorded in the Office of Probate of Mobile County. Owners to have thirty (30) days from date of acceptance of this offer to fulfill this obligation.'
". . .
"The purchase contract was prepared by Clark's real estate agent, Charles Shaw.
"Unit IV had been subdivided in early 1963 by Cypress Shores and the restrictive covenants appertaining thereto had been recorded on March 21, 1963. Pursuant thereto, Defendant Cypress Shores as the developer, by and through the Architectural Committee retained the right and power to amend or cancel all or any part of the restrictions at any time by an instrument executed by the said committee.
"Pursuant to said authority, on November 1, 1980, the Architectural Control Committee of Cypress Shores executed a document purporting to remove the restrictive covenants pertaining to Lots 46 and 47, so as to comply with the requirements of the purchase contract.
"The modification executed by the Architectural Control Committee of Cypress Shores was recorded on November 18, 1980, in real property book 2177, page 604 of the Probate Court Records of Mobile County, Alabama, and is hereinafter quoted in its entirety.
 " 'Pursuant to the provisions of the instrument captioned "Covenants, Restrictions and Limitations" dated March 21, 1963, and recorded in real property book 406, pages 255-259 of the records in the Office of the Judge of Probate of Mobile County, Alabama, the Architectural Control Committee to which references [are] made in paragraph 3 of said instrument, acting by and through the undersigned Kenneth R. Giddens, Arthur Tonsmeire, Jr., and William Lyon, who comprised a majority of the members of such Committee, does hereby annul, cancel and modify the said instrument and all of the covenants, restrictions and limitations and requirements therein set forth insofar as they relate to lots 46 and 47 of Unit IV of the subdivision, plat of which is recorded in Map Book 14, Page 82 of said records, and the said instrument is hereby modified so as to effect such cancellation and annulment.' "
"On November 21, 1980, the closing of the sale of the said lots to Clark occurred. No representative of Cypress Shores was present.
"The Plaintiff received the document removing the restrictions from his real estate agent Shaw prior to the closing. The Plaintiff received the warranty deed dated November 13, 1980, at closing.
"The contents of the document and the purchase agreement contained the representations relied on by Clark concerning the removal of the restrictive covenants. No oral representations were made to Clark concerning the effect of the removal document. Clark and his employee, Vincent Dyal, testified that no discussions concerning the sale were had with any agent, servant or employee of Cypress Shores. *Page 624 
"The deed states in pertinent part:
 " 'The property is conveyed subject to all existing utility and drainage easements and rights-of-way and zoning restrictions, as well as to the lien for current ad valorem taxes, which grantee assumes and agrees to pay when due, and to the following, specifically:
 " 'To the exception and reservation hereinabove mentioned; to building set back line, drainage and utility easement, and all other matters shown on said plat; to easement granted Alabama Power Company by instrument recorded in real property book 538, page 834; to all other existing easements and rights of way, if any; to restrictive covenants as contained in instrument recorded in real property book 406, page 255, as modified by instrument recorded in real property book 2177, page 604, and to all matters of public record or visible on the ground, or that are shown or would be shown on an accurate survey of the property.
" '. . .
 " 'Grantor covenants to and with the grantee that, except as to matters, exceptions and reservations above referred to, it is lawfully seized of said property, the same is free from other encumbrances, and it and its successors will forever warrant and defend the title to said property, as herein conveyed, unto the said grantee, and unto the heirs, successors and assigns of grantee, against the lawful claims of all persons, whomsoever.
 " 'All recordations mentioned herein refer to the records in the office of the Judge of Probate Court of the County in which the above property is located, [Mobile County] unless otherwise indicated.' "
"By late November 1980, Clark had commenced construction on the lots.
"Thomas Deas, attorney for the residents of Cypress Shores, contacted Charles Street or Calvin Clay, attorneys for Clark, in mid-November 1980 expressing concern over the apparent commencement of construction of the convenience store on residential lots in the subdivision, and inquiring as to whether any authority or permission existed therefor.
"On November 19, 1980, Calvin Clay, attorney for Clark, wrote to Mr. Deas in response to his inquiry and enclosed a copy of the covenants and removal document and advised that authority existed to construct the store on the lots in question.
"On November 24, 1980, Deas wrote a letter jointly to Calvin Clay and to Vivian G. Johnston, Jr., a stockholder of Cypress Shores Development, enclosing a copy of the complaint for injunction and requesting that Clark cease further building activity on the lots.
"The actual complaint was filed on November 25, 1980, the next day.
"Clark was served December 5, 1980.
"At the date of the hearing on the injunction before Judge Hogan, on December 18, 1980, improvements limited only to the sitework had been done.
"The sum of $13,671 was spent on sitework for the building, although when the expenditures occurred is a matter of dispute.
"On November 28, 1980, Clark paid $2,317.00 of the sitework cost to G.B. Moore for fill dirt and haul off of excavated dirt. On the invoice no date for the work [was specified, although the Plaintiff's contractor, Terry Whitney, testified that the work was] done a day or so prior thereto. On December 5, 1980, Clark paid Moore $6,076.00 for fill dirt and haul off of excavated dirt. The invoice stated that the date for the work was . . . November 28 to December 4, 1980. On December 10, 1980, Clark paid Moore a statement of $3,577.00 for work done from December 4 to December 10, those invoices total $11,970.00.
"Other sitework was added later. On March 27, 1981, fill and was provided by [sic] Frank Jordan Construction Co., for which Clark paid $1,592.00.
"Prior to the hearing on December 18, 1980, concerning sitework, in addition to payments to Moore, Clark had paid his *Page 625 
contractor Terry Whitney on December 5, 1980, for sitework labor incurred the preceding four days. At the date of the hearing, Clark had paid Moore $11,970.00.
"Judge Hogan denied the request for injunction on December 24, 1980. On that date, the Plaintiff residents filed Motion for Grant of Injunction pending the appeal which Judge Hogan granted on January 5, 1981, and required them to post a $50,000 bond which they failed to do. The appeal to the Supreme Court of Alabama was filed by the residents on February 3, 1981. The case was one of first impression with the Court, there being no previous decision specifically invalidating the use of such power for that purpose.
"Completion of construction of the store was then commenced by Clark.
"The slab was poured on February 19, 1981, and the footing was poured several days earlier. The concrete blockwork was done prior to February 20, 1981.
"The cost of the building and improvements excluding the sitework was $55,241.07.
"The building was completed and opened March 26, 1981.
"The store was operated continuously thereafter until closed.
"Clark placed a mortgage on the property on March 31, 1981, with American National Bank in the amount of $104,000.00. . ..
"Clark leased by oral agreement the building to his corporation, Complete Package Food Stores, Inc., of which he owned 100% of the stock, for $3,200.00 per month.
"On April 30, 1982, the Supreme Court of Alabama in the case styled Wright v. Cypress Shores Development Co., Inc.,413 So.2d 1115 (1982), reversed the decision of the trial court and remanded a case for further proceedings not inconsistent with its opinion.
"On January 19, 1983, Judge Robert Hodnette, Jr., ordered among other things that operation of the store cease. The store was closed on or about April 28, 1983. On that day, Clark filed the subject complaint against Cypress Shores Development Co., Inc. Other Defendants and causes of action having been dismissed, the only remaining Defendant in this case is Cypress Shores Development Co., Inc., and the only remaining causes of action against the Defendant are breach of contract based on the purchase agreement and deed given by the Defendant to the Plaintiff.
"Pursuant to the directive contained in the decision of the Supreme Court of Alabama in Wright v. Cypress ShoresDevelopment Co., Inc., 413 So.2d 1115 (1982), the building and the canopy and the gas pumps were removed shortly after September 21, 1984.
"Norman Clark expended the following sums of money subsequent to purchasing the property in question:
"1. Fill and foundation preparation work: $13,671.00
"2. Cost of building (material and labor): $55,241.00
"The corporation entered into a sixty month lease with Avco Financial Services, requiring monthly payments of $739.16 which lease covered the following equipment installed on the premises:
"(a) The two gas pumps with console.
"(b) Island.
"(c) Guard posts.
"(d) Canopy and lights.
"(e) Four refrigerators (coolers).
"(f) All shelving.
"The total cost of the lease was $44,389.00 less the $19,218.00 for the 26 months that the store was open and the leased equipment used.
"Additionally, the corporation installed two gasoline tanks which it had in prior inventory, worth approximately $2,700.00 each.
"The gasoline tanks remain in place, as does the asphalt parking lot.
"After destruction of the building, the corporation has retained possession of the gasoline pumps, the canopy, the shelving, and four refrigerator coolers, although *Page 626 
their present value is unknown. There was no remaining salvage value to the store.
"The present fair market value of the two lots as residential lots is $5,000.00 each. The Defendant in this case has never requested rescission of the purchase contract."
(Emphasis in original.) (The bracketed material is found in the court's original order and was apparently inadvertently omitted in the amended order.)
In granting Clark's motion for summary judgment on this claim for breach of warranty of title, the trial court limited the damages recoverable by Clark to $12,500 — the difference between the purchase price of the two lots ($22,500) and their present fair market value, stipulated to by the parties as $5,000 per lot. The only issue presently raised by Clark is the correctness of the trial court's ruling on the measure of damages. By its cross-appeal, Cypress Shores argues that the trial court erred in finding that the existence of the restrictive covenants violates the covenant against encumbrances contained in the deed. Having reviewed and analyzed the conclusions of law reached by the trial court on these two issues, including the authorities relied upon, we find that Judge Robert L. Byrd, Jr., has correctly decided these issues in his thorough and well-reasoned order. We hereby adopt the pertinent portions of that order as our opinion:
"The general rule concerning a contract made to convey the property is that once a deed has been executed and delivered, the contract becomes merged into the deed, because it has accomplished the purpose for which it was created. Holmes v.Birmingham Transit Company, 270 Ala. 215, 116 So.2d 912 (1959). The terms in the deed which follows the contract of sale become the sole memorial of the agreement which was once contained in the contract of sale. Asbury v. Cochran, 243 Ala. 281,9 So.2d 887 (1942). This does not mean that a contract no longer exists, just that the deed controls as the contract, rather than the terms of the prior sales contract. Plaintiff may only maintain his breach of contract action on the deed.
"The warranty deed given by the defendant, Cypress Shores Development Co., Inc. to the plaintiff, Norman H. Clark, after setting the basic terms of the conveyance and a description of the property to be conveyed, includes the following further agreements and warranties:
 " 'The property is conveyed subject to all existing utility and drainage easements and rights-of-way and zoning restrictions, as well as to the lien for current ad valorem taxes, which taxes grantee assumes and agrees to pay when due, and to the following, specifically:
 " 'To the exception and reservation hereinabove mentioned; to building set back line, drainage and utility easement, and all other matters shown on said plat; to easement granted Alabama Power Company by instrument recorded in Real Property Book 538, Page 834; to all other existing easements and rights of way, if any; to restrictive covenants as contained in instrument recorded in Real Property Book 406, Page 255, as modified by instrument recorded in Real Property Book 2177, Page 604; and to all matters of public record or visible on the ground, or that are shown or would be shown on an accurate survey of the property.
" '. . .
 " 'Grantor covenants to and with the grantee that, except as to matters, exceptions and reservations above referred to, it is lawfully seized of said property, the same is free from other encumbrances, and it and its successors will forever warrant and defend the title to said property, as herein conveyed, unto the said grantee, and unto the heirs, successors and assigns of grantee, against the lawful claims of all persons, whomsoever. " 'All recordations mentioned herein refer to the records in the office of the Judge of Probate Court of the County in which the above property is located [Mobile County], unless otherwise indicated.' "
"Although the original contract of sale between the parties was merged into the *Page 627 
deed when it was executed and delivered, the deed itself includes a reference to the agreement to modify the restrictions in the paragraphs quoted above. The modification referred to in the deed is incorporated by reference and becomes a part of the deed as if restated in its entirety.Mayo v. Andress, 373 So.2d 620, 264 (Ala. 1979); Turk v. Turk,206 Ala. 312, 89 So. 457 (1921).
"By mentioning the modification to the restriction by book and page number, the grantor incorporated by reference all terms stated in the modification of the restriction which had been filed by the Architectural Control Committee on November 1, 1980. Thus, the deed executed on November 13, 1980, specifically subjects the restrictions it mentions to the modification it incorporates, and thereby nullifies them.
"The warranty and covenant that the restrictive covenants previously made against the use of the lots being transferred had been modified to exclude those specific lots from the application of the restrictive covenants, was done specifically in the habendum clause of the deed. The specific reference to the modification stated that the property was made subject to the restrictive covenants 'as modified by the instrument recorded in Real Property Book 2177, Page 604'; and, in a later paragraph, defendant, as grantor, covenanted that there was no other encumbrance or restriction other than the ones which had previously been specified in the deed. What the deed expressly states, in referring to the restrictive covenants and the modification, is a double negative or an exclusion negating a former exclusion. Although this is a somewhat convoluted approach, the effect is that of negating the prior restrictions which the deeded property had been subjected to in the past. Therefore, the Court finds that defendant's argument in its Summary Judgment motion that the deed contains no warranty or covenant against encumbrance is without any support from the facts. The deed clearly covenants and warrants that the restrictions have been modified and it does not include the exculpatory phrase 'if at all' after referring to the modification. Thus, defendant's argument that no warranty or covenant was made must fail. Grantor is precluded, by the statements made in the deed, from denying that it asserted in the deed that the restrictions were modified, based on the theory of estoppel by deed. Garrow v.Toxey, 188 Ala. 572, 66 So. 443 (1914); Denny v. Wilson County,198 Tenn. 677, 281 S.W.2d 671, 675 (1955); Cleveland BoatService v. City of Cleveland, 102 Ohio App. 255,130 N.E.2d 421, 425 (1955). The defendant is also estopped, by the deed it has signed, from stating that the agreement stated in the deed was only to file the document for modification, when the clear intent of the language in the deed is that the modification of the restrictions had been accomplished and consideration given therefor. Id. Defendant fails to state any defense to plaintiff's action on this theory.
"This Court finds that the argument asserted by defendant, that the purchase agreement constitutes an illegal contract which cannot be enforced, is totally unsupported by the facts of this case and the law cited by the defendant. First, the Supreme Court in Wright v. Cypress Shores Development Co.,Inc., 413 So.2d 1115 (Ala. 1982), merely declared a modification referred to in the deed as 'void' — not illegal.
The act of modifying a restrictive covenant in a deed is not illegal. The cases defendant cites in support of this argument concern situations where a contract was made for the accomplishment of certain acts which were already statutorily
illegal, criminal or immoral at the time the contract was made. The rule of law stated by the defendant applies to the unenforceability of contracts which would require the performance of an illegal, criminal or immoral act, such as: gambling, prostitution, adultery, etc. Potter Son v. Gracie,58 Ala. 303 (1877); see also 17 Am.Jur.2d Contracts §§ 181-82. The specific case cited by defendant, Derico v. Duncan,410 So.2d 27 (Ala. 1982), involved a party's violation of a statutory consumer protection law, which was akin to a misdemeanor. In that case, the Court held that the contract made in violation of said statute was illegal, and thus, unenforceable. As no statute *Page 628 
was violated by the filing of a modification of restrictive covenants, the contract between the plaintiff and defendant was not illegal, and thus, defendant has no defense based on this theory.
". . .
"This Court finds that the Plaintiff has established a breach of the term stated in the deed which asserts that the restrictions on the deeded property have been nullified. The deed sets out clearly that the lots transferred are only subject to the restrictions listed, which it then qualifies as being modified so as not to apply at all. The book [number] and page number of the modification [are] listed, effectively incorporating the terms of the modification. The modification clearly states that all restrictions previously placed on the lots were to be nullified by the modifying document.
"This Court concludes that the second cause of action as filed by the plaintiff presents a claim for breach of warranty of title in the deed, although the plaintiff argues that it only sets forth a claim for breach of contract. As this Court holds that the purchase contract was merged into the deed, as such, this Court finds that only a breach of warranty of title against encumbrances occurred. The general rule where failure of title does not occur is that the measure of damages for breach of a covenant against such encumbrance is the depreciation in the value of the land from this cause. See: 20 Am.Jur.2d Covenants, Conditions, etc. § 145.
 " 'If an encumbrance or defect amounts to less than total failure of title, the measure of damages for breach of a covenant of title is the diminished value of the title conveyed, on account of such encumbrance or defect.' (Citing Alger-Sullivan Lumber Co. v. Union Trust Co., 218 Ala. 448, 118 So. 760 (1928).
 " 'That is, the grantee is entitled to recover the difference between the value of the whole tract, if the title were good, and its value as depreciated by the encumbrance, not, however, to exceed the purchase price of the whole tract, with interest thereon.' (Citing Clark v. Ziegler
[Zeigler], 79 Ala. 356 (1888)).
 " 'This is an application of the rule of damages that if one is bound to warrant, he warrants the entirety; but he shall render value only for that which was lost.' " Id. § 144.
See also: Copeland v. McAdory, 100 Ala. 553, 13 So. 545 (1893);Crickenberger v. Clay, [215 Ala. 67], 109 So. 363 (1926);Alger-Sullivan Lumber Co. v. Union Trust Co., 218 Ala. 448,118 So. 760 (1928); 21 C.J.S. Covenants § 145; 20 Am.Jur.2dCovenants, Conditions, etc. § 134 at 693; § 139 at 696; § 145 at 703 (1965).
"The measure of damages for breach of warranty against encumbrances cannot exceed the purchase price. Even in a case of complete failure of title, the maximum recovery is limited to the purchase price.
 " 'The loss is to be based upon the purchase price of the land, and the fact that the land was actually worth much more or less than the purchase price cannot be taken into consideration.' " Id. at § 144.
"St. Paul Title Insurance Corporation v. Owen, 452 So.2d 482
(Ala. 1984). Colson v. Harden, [224 Ala. 665], 141 So. 639
(1932).
"It has been stipulated that the present fair market value of the lots is $5,000 each. Therefore, the depreciation in value of the land is $12,500.00.
"Thus, the maximum recovery to which the plaintiff would have been entitled if title had failed entirely would be $22,500.00. But since a complete failure of title is not had in this case, plaintiff can only recover the depreciation of $12,500.00 due to the encumbrance.
"See also: 20 Am.Jur.2d Covenants, Conditions, etc. § 145 at 703.
"The value of improvements made by the grantee after the purchase is not an element of damage nor are consequential damages recoverable. The general rule is that where 'damages are assessed as of the time when the contract was entered into, the ordinary measure of damages, that is the purchase price and interest, — applies . . . notwithstanding any increase in the value of the land attributable to the improvements *Page 629 
upon the land by the grantee.' 21 C.J.S. Covenants § 145.
"Therefore, Alabama follows the general rule which limits maximum recovery for breach of covenants to the amount of the purchase price, and does not permit recovery by the grantee of the value of improvements or consequential damages.Copeland v. McAdory, supra, and Dallas Compress Company v.Liepold, 205 Ala. 562, 88 So. 681 (1921). In Davis v. Smith,5 Ga. 274, 48 Am.Dec. 279 (1848), the Court said:
 " 'He (the vendor) cannot be presumed to contract in reference to any future condition of the estate which he sells, either to his loss by its natural appreciation, or its actual improvement, or to his gain by its depreciation. He does not submit himself and his heirs to the contingencies which run through many years, much less can he be understood as contracting for a liability to pay for improvements, which rest altogether within the discretion, or caprice, or folly of the purchaser.' " (Emphasis supplied.)
"In Kenny [Kinney] v. Watts, 14 Wend. N.Y. 38 (1935), the Court said:
 " 'The vendee when he purchases, may insist upon special covenants, which will secure to him a perfect indemnity for any expenditures or improvements on the premises, in case of eviction; but, if he takes the general covenants of warranty and quiet enjoyment, he has no right to complain if the law does not afford him full compensation for the loss and injury which he has sustained by eviction. If he resorts to an action upon this covenant, he must take the rule of damages which the law has established for a breach of it.
 " '. . . The measure of damages recoverable for breach of warranty of title is not affected by the proportion between the value of the mesne profits received by the evicted grantee in his outlay for improvements and taxes, the latter being less than the value of the mesne profits received.' " 61 A.L.R. 1, at [184-187], supra.
"The rule against recovery of the value of improvements especially applies to the plaintiff in this case since the improvements were erected by him at his own risk and subject to the possible (and actual) adverse result on appeal. The Alabama Supreme Court, in the second decision of Wright, supra, stated:
 " 'We also agree with [the] argument that Clark acted at his own peril in building the store because he knew that the first appeal was pending in this Court.' " 461 So.2d 1296 at 1299 (1984).
"Therefore, this Court will not grant the plaintiff additional damages due to the value of the improvements lost which directly occurred as a result of the plaintiff's failure to mitigate his damages and erecting the improvements in conscious disregard of the consequences of the action of the subdivision property owners.
"The doctrine of caveat emptor applies to the sale of unimproved real estate. Where no fraud occurs, as here, the protection of title afforded a purchaser arises from the covenants contained in the deed. Plaintiff's only remedy in this case, since rescission has not been claimed, would be under any covenants of title in the deed. There are no special covenants in the instant deed which would provide a basis for recovery for the plaintiff's improvements. This Court has previously set forth the measure of damages for breach of the general covenants of title.
"As stated in Asbury v. Cochran, supra, the general rule is:
 " '[T]hat in the absence of stipulations to the contrary, every contract for the sale of real estate implies that a good title will be made.' " (Citations omitted.)
 " 'This applies to an executory contract for the purchase and sale of real estate and is given by law, and exists until the contract has been performed by the execution of a deed. When that is done the purchaser must rely on the warranty in his deed; and if there is none, the rule of caveat emptor applies.' " [243 Ala. at 283, 9 So.2d at 889.]
"See also: Cochran v. Keeton, 47 Ala. App. 194, 252 So.2d 307
(1970) aff'd, 287 Ala. 439, *Page 630 252 So.2d 313 (1971); and Colonial Capital Corp. v. Smith,367 So.2d 490 (Ala.Civ.App. 1979).
"ORDER
"It is therefore ORDERED, ADJUDGED and DECREED that the plaintiff Clark's Motion for Summary Judgment be and the same is hereby granted as to the claim for breach of warranty of title against encumbrances, and the defendant Cypress Shores's Motion for Summary Judgment is denied but the Court grants its motion for Summary Judgment in the alternative as to the issue of damages, and this Court finds that the measure of damages is the amount of $12,500, the difference between the purchase price of the subject lots and their present fair market value, together with interest at the legal rate."
Let the judgment be affirmed.
AFFIRMED.
MADDOX, ALMON, ADAMS and HOUSTON, JJ., concur.