NATIONAL SUPER MARKETS, INC., Plaintiff-Appellee, v. MAGNA TRUST COMPANY, Trustee, *et al.*, Defendants-Appellants.

Fifth District   No. 5—90—0135

Opinion filed April 15, 1991.

Thompson & Mitchell, of Belleville (Donald E. Heihl and James J. Raymond, of counsel), for appellants.

Ann E. Hamilton, of St. Louis, Missouri, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Plaintiff, National Super Markets, Inc. (National), filed a complaint for permanent injunction seeking to enjoin defendants, Magna Trust Company, trustee of trust No. 03—90—1083—00 (No. 1083) and trust No. 22—242 (No. 242), Wetterau, Inc. (Wetterau), Donald Soffer Investments, and Donald G. Soffer (Soffer), from violating National's 1976 lease agreement by operating a Shop 'n Save food store at 650 Carlyle Avenue (the 650 property) in Belleville, Illinois.

The lease originally covered property located at 655 Carlyle Avenue in Belleville, Illinois (the 655 lease). While National and Soffer were not the original parties to the lease, they agree that by virtue of various assignments the lease governs their rights in this case. National was the lessee under the 655 lease while Soffer was the lessor. The lease provides in pertinent part:

> "Landlord covenants and agrees, from and after the date hereof and so long as this lease shall be in effect, not to lease,

rent, occupy, or suffer or permit to be occupied, any part of the Shopping Center premises or any other premises owned or controlled, directly or indirectly, either by Landlord, its successors, heirs, or assigns, or Landlord's principal owners, stockholders, directors, or officers or their assignees (hereinafter called Owners), which are within 1 mile of the Shopping Center premises for the purpose of conducting therein or for use as, a food store or a food department or for the storage or sale for off-premises consumption of groceries, meats produce, dairy products, or bakery products, or any of them; and further, that if Landlord or owners own any land, or hereinafter during the term of this lease Landlord or Owners acquire any land within such distance of the Shopping Center, neither will convey the same without imposing thereon a restriction to secure compliance with the terms of this lease. *** *Further provided, however, that if Mortgagee shall become the owner of the Shopping Center, this paragraph shall not be applicable to any property, other than the Shopping Center, which such Mortgagee may then or thereafter own.*" (Emphasis added.)

National alleged that Soffer violated the terms of the restrictive covenant by leasing the 650 property to Wetterau, a retail grocery operator who plans to open a Shop 'n Save store on the property. Defendants asserted by way of affirmative defenses that the restrictive covenant violated section 1 of the Sherman Act (15 U.S.C. §1 (1988)) and that the mortgagee exception applied to them. The trial court issued a permanent injunction against the development of the 650 property in violation of the restrictive covenant and also enjoined Soffer from transferring title or ownership without imposing a restriction in compliance with the restrictive covenant. Defendants appeal and raise the following issues:

(1.) Whether the restrictive covenant is valid under section 1 of the Sherman Antitrust Act.

(2.) Whether Illinois law requires a plaintiff seeking a permanent injunction to enforce the terms of a restrictive covenant to prove that the public will not be adversely affected if the permanent injunction is granted.

(3.) Whether defendants are relieved from compliance with the restrictive covenant in the lease by the mortgagee exception.

■■ ■ Defendants initially contend that the restrictive covenant illegally restrains trade in violation of section 1 of the Sherman Act. Section 1 of the Sherman Act prohibits "every contract, combination

\*\*\* or conspiracy, in restraint of trade." (15 U.S.C. §1 (1988).) Despite this broad language, the courts, recognizing that all contracts alter trade in some manner, have interpreted section 1 as outlawing only "unreasonable" restraints of trade. (*Northern Pacific Ry. Co. v. United States* (1958), 356 U.S. 1, 2 L. Ed. 2d 545, 78 S. Ct. 514.) Two basic methods are considered when evaluating the validity of activity challenged under the Sherman Act; the doctrine of *per se* illegality and the "rule of reason" approach. (*Continental T.V., Inc. v. GTE Sylvania Inc.* (1977), 433 U.S. 36, 53 L. Ed. 2d 568, 97 S. Ct. 2549.) Defendants contend that the restrictive covenant is invalid under either approach. We disagree.

## PER SE ILLEGALITY

▆▆■ In *Northern Pacific*, the supreme court stated:

"[T]here are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use. This principle of *per se* unreasonableness not only makes the type of restraints which are proscribed by the Sherman Act more certain to the benefit of everyone concerned, but it also avoids the necessity for an incredibly complicated and prolonged economic investigation into the entire history of the industry involved, as well as related industries, in an effort to determine at large whether a particular restraint has been unreasonable—an inquiry so often wholly fruitless when undertaken." (*Northern Pacific Ry. Co. v. United States* (1958), 356 U.S. 1, 5, 2 L. Ed. 2d 545, 549-50, 78 S. Ct. 514, 518.)

The general consensus of the Federal courts which have considered covenants in shopping center leases is that the varying terms, conditions and economic specifications for these covenants render the application of the *per se* doctrine inappropriate. (*Harold Friedman Inc. v. Thorofare Markets Inc.* (3d Cir. 1978), 587 F.2d 127, 140, 142; see *Child World, Inc. v. South Towne Centre, Ltd.* (S.D. Ohio 1986), 634 F. Supp. 1121.) One of the primary reasons that clauses such as the one set forth above have not been found to be illegal *per se* is that they encourage economic development. The clauses are thought to be inducements for tenants to establish stores which in turn attract other tenants who will hopefully enter the marketplace. *Child World, Inc.*, 634 F. Supp. at 1129.

We cannot state that the restrictive covenant lacks any redeeming virtue and, therefore, we must conclude that the trial court's finding that it is not *per se* unreasonable under section 1 of the Sherman Act was proper. *Harold Friedman Inc.*, 587 F.2d at 141.

"RULE OF REASON"

■ Since we have agreed with the trial court that the restrictive covenant is not illegal *per se*, we must now examine the "rule of reason" approach. Under the "rule of reason" approach, all circumstances must be evaluated by the trier of fact to determine whether the complained-of conduct poses an unreasonable restraint on competition. (*Gough v. Rossmoor Corp.* (9th Cir. 1978), 585 F.2d 381; *Optivision, Inc. v. Syracuse Shopping Centers Associates* (N.D. N.Y. 1979), 472 F. Supp. 665.) Some of the factors considered when determining the validity of a restrictive covenant are the impact it has on competition in the relevant market, the availability of alternate sites for the entity excluded by enforcement of the covenant, the scope of the restrictive covenant, and the economic justification for the inclusion of the restrictive covenant in the lease. *Harold Friedman Inc.*, 587 F.2d at 142-44; *Child World, Inc.*, 634 F. Supp. at 1131.

One focus of the analysis in the "rule of reason" approach is upon the impact of the challenged activity on the relevant market, which may be either the product market or the geographic market. (*Gough*, 585 F.2d at 388.) "[I]n determining the relevant market the courts are not free to accept whatever market is suggested by the plaintiff as fitting most persuasively with his contention that his power to compete effectively has suffered injury." (*Gough*, 585 F.2d at 389.) A review of the record reveals that very little evidence was introduced concerning the relevant product market. It appears that the major dispute over the market issue concerns the relevant geographic market. Defendants argue that the relevant geographic market is limited to east Belleville and the rural area surrounding it, while National argues that the relevant market includes not only east Belleville, but also west Belleville, Swansea, and some incorporated areas surrounding the Belleville area. The trial court agreed with National.

■ The relevant geographic market is defined as the area in which the seller operates and to which the purchaser can practicably turn for supplies. (*Gough*, 585 F.2d at 389.) Plaintiff's witness, Joseph Percelli, National's real estate manager, testified that the relevant market area for National's 655 store was nearly all of Belleville, Swansea, and some additional unincorporated areas surrounding Belleville. On cross-examination, another witness, Jim Duban, vice-

president for retail operations of defendant Wetterau, testified that the opening of the Shop 'n Save store in east Belleville on the 650 property would have an effect on retail grocery stores in west Belleville. He stated that the Shop 'n Save store located on the 650 property in east Belleville would draw consumers from west Belleville. A careful review of the record establishes that the trial court's conclusion that the relevant geographic market includes east and west Belleville, Swansea, and some additional unincorporated areas surrounding Belleville is not against the manifest weight of the evidence.

■■ Having determined the area of the relevant geographic market, we must now review the impact the restrictive covenant has on competition. Duban testified that competition within the relevant market area was high, and he also stated that the area contained over 25 stores engaged in the sale of grocery products. We conclude that the trial court's finding that the exclusion of Shop 'n Save from the 650 property will not have a significant impact on competition in the relevant market area was not erroneous.

We note also that the restrictive covenant set forth above is narrow in scope. It applies only to Soffer and it operates only during the lease term. The geographic scope of the restrictive covenant is limited to property owned within one mile of the 655 property. After a careful review of the record, we feel that the trial court's conclusion that the restrictive covenant does not violate section 1 of the Sherman Act was not against the manifest weight of the evidence.

Defendants next assert that Illinois law requires a plaintiff seeking a permanent injunction to prove that granting the injunction will not adversely affect the public.

■■ In *Wier v. Isenberg* (1981), 95 Ill. App. 3d 839, 842-43, 420 N.E.2d 790, 793, the covenant restricted the use of the defendant's property to residential purposes and the plaintiffs sought to enjoin the defendants from offering psychological counseling services in the neighborhood. The defendants argued that the covenant should not be enforced because the benefits derived by the community from defendant's use of the property outweighed the burden to the neighborhood. The court rejected the defendant's argument and held that the plaintiff was not required to show an injury in order to enforce the covenant. (*Wier*, 95 Ill. App. 3d at 842-43, 420 N.E.2d at 793.) Based on the foregoing, we do not feel that National was required to prove that granting the injunction would not adversely affect the public. See also *Freehling v. Development Management Group, Inc.* (1979), 75 Ill. App. 3d 243, 393 N.E.2d 646.

Defendants finally contend that they are not required to comply with the restrictive covenant because the "mortgagee" exception is applicable to the facts of this case.

Soffer and Wetterau were both aware of the restrictive covenant in the 655 lease before the 650 lease was executed. To come within the mortgagee exception, Soffer, Wetterau, and defendant Magna Trust Co. engaged in a series of transactions. We note that the trial court found that all of the transactions which defendants believed were necessary to come within the mortgagee exception had not been completed. The trial court also found, however, that even if all transactions contemplated as necessary by the defendants had been completed, defendants would still not be excepted from the provisions of the restrictive covenant. For our purposes, we shall assume that all transactions contemplated by defendants had been completed.

The transactions which Soffer and Wetterau believed would enable them to avoid the effect of the restrictive covenant were as follows:

(1.) Soffer purchases the 650 property and places it into land trust No. 542 of which he is the sole beneficiary.

(2.) Soffer directs trustee of No. 542 to transfer 650 property to land trust No. 1083 of which Soffer is the sole beneficiary.

(3.) Soffer obtains a loan of an uncertain amount from Magna Bank of Belleville and transfers the funds to the holders of the mortgage covering the 655 property, Jefferson National Life Insurance Company and American United Life Insurance Company (holders).

(4.) In exchange, the holders execute an assignment of the mortgage to Magna Trust Company, trustee of trust No. 1083.

(5.) Soffer then transferred the 655 property to the trustee of No. 1083.

■ Defendants contend that these transactions have enabled them to comply with the terms of the mortgagee exception provision. They assert that the trustee of No. 1083 is now the mortgagee of the 655 property and free to lease the 650 property to Wetterau. National responds by arguing that the restrictive covenant clearly prevents Soffer from leasing property within one mile of National and that if the trustee of No. 1083 is held to be the mortgagee of the 655 property and not subject to the restrictive covenant the whole purpose of the covenant would be frustrated. The trial court found that Soffer's financial scheme did not meet the requirements of the mortgagee exception. We agree.

"In applying the restrictive covenant to the facts before this court, the primary objective is to construe the contract as a

whole to give effect to the intentions of the parties." (*Johns-towne Centre Partnership v. Chin* (1983), 99 Ill. 2d 284, 290, 458 N.E.2d 480, 483.)

"The intent of the parties must be determined from the contract as a whole and not from any one clause standing alone." (*White v. White* (1978), 62 Ill. App. 3d 375, 378, 378 N.E.2d 1255, 1258.) It is presumed that each provision of a contract was inserted deliberately and for a purpose. *White*, 62 Ill. App. 3d at 378, 378 N.E.2d at 1258.

■■■ In light of these long-standing rules of construction, we must conclude that the trial court properly found that Soffer's financial scheme would not exempt defendants from complying with the restrictive covenant. Were we to review only the mortgagee exception clause, we might agree that the financial scheme exempts defendants from compliance with the restrictive covenant. However, we must view the lease as a whole (*Johnstowne Centre Partnership*, 99 Ill. 2d 284, 458 N.E.2d 480), and it clearly prevents Soffer from leasing property to any retail grocery operation within one mile of the 655 property. It is undisputed that Soffer is the sole beneficiary of trust No. 1083 and that the trustee of No. 1083 cannot act without written directions from Soffer. Were we to accept defendant's contention that Soffer can successfully avoid the restrictive covenant by engaging in the financial scheme described above, the exclusivity clause would be meaningless.

For all the foregoing reasons, we conclude that the trial court's decision to issue the injunction was proper.

The judgment of the circuit court of St. Clair County is therefore affirmed.

Affirmed.

HOWERTON and LEWIS, JJ., concur.