**SHOP 'N SAVE WAREHOUSE FOODS, INC., a corporation, Plaintiff/Respondent,**

v.

**Donald G. SOFFER and Magna Trust Company, a corporation, Defendants/Third–Party Plaintiffs/Appellants,**

v.

**Donald E. WEIHL, Thompson & Mitchell, a Partnership, by and through William G. Guerri as Class Representative, and Weihl & Millard, Ltd., a dissolved Illinois corporation, Third–Party Defendants/Respondents.**

No. 66971.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 6, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 11, 1996.

Application to Transfer Denied
April 23, 1996.

RHODES RUSSELL, Judge.

Defendants, Donald G. Soffer and Magna Trust Company[1] ("Soffer"), appeal a judgment entered upon a jury verdict in favor of Plaintiff Shop 'N Save Warehouse Foods, Inc. ("Shop 'N Save") on its petition for breach of the covenant of quiet enjoyment as contained in a commercial lease. Soffer further appeals a judgment in favor of Third–Party Defendants Donald E. Weihl, Thompson & Mitchell, and Weihl & Millard, Ltd., on their third-party claim for malpractice. We affirm.

The basic facts of this case are undisputed. Soffer was a commercial real estate investor in the St. Louis area. Shop 'N Save owned and operated a chain of grocery stores also in the metropolitan St. Louis area.[2] Prior to the lease agreement here at issue, Soffer and Shop 'N Save had entered into four other commercial lease agreements, all containing essentially the same language.

In early 1989 Soffer owned property on 650 Carlyle Road in Belleville, Illinois. The property contained a large building, formerly used as a store, a strip shopping center and a parking lot. In March 1989, Soffer initiated discussions with Shop 'N Save concerning Shop 'N Save possibly leasing the 650 Carlyle property as a grocery store.

During that period Soffer also owned the shopping center across the street at 655 Carlyle Road and leased a portion of the center to National, another supermarket chain, for use as a grocery store. The lease between Soffer and National contained a restrictive covenant which prohibited Soffer, as lessor, from leasing any other premises within one mile of the 655 Carlyle Road property for use as a grocery store. This radius restriction had an exception for a mortgagee who became the owner of the 655 Carlyle Road property. Specifically, the mortgagee exception to the radius restriction provided:

Gerald P. Greiman, St. Louis, for appellants.

Byron E. Francis, St. Louis, for plaintiff/respondent.

John Gianoulakis, St. Louis, for third-party defendants/respondents.

1. Magna Trust Company is the trustee of Illinois land trust, Trust No. 1083, which owns the property at 650 Carlyle Road. Donald Soffer is the sole beneficiary of the trust. Under Illinois law, although the trustee holds legal title, the beneficiary is considered to be the owner of the property. *See People v. Chicago Title & Trust Co.*, 75 Ill.2d 479, 27 Ill.Dec. 476, 479–82, 389 N.E.2d 540, 543–46 (1979). For simplicity, we refer to defendants herein as "Soffer."

2. Shop 'N Save was during the relevant period a subsidiary of Wetterau, Inc., a grocery wholesaler.

[I]f a Mortgagee shall become the owner of the Shopping Center, [the radius restriction] shall not be applicable to any property, other than the Shopping Center, which such Mortgagee may then or thereafter own.

In the course of their discussions over the property at 650 Carlyle, Soffer informed Shop 'N Save of the radius restriction and discussed how it might pose a problem for leasing the property as a grocery store. The officers of Shop 'N Save were concerned and made known to Soffer that Shop 'N Save would not enter into a lease until they received written assurances satisfactory to their legal department that the radius restriction would not interfere with the plans and that they could develop and use the property as a grocery store.

In June of 1989, Soffer sought advice from several attorneys as to the enforceability of the radius restriction and possible ways to avoid its effect by using the mortgagee exclusion. Soffer consulted one local attorney who concluded that the mortgagee exclusion could be used to avoid the radius restriction and proposed that Soffer pay off the then outstanding loan balance to the two insurance companies who held the mortgage. Soffer would then get a release of the mortgage by the two companies, create a new mortgage and effect certain transfers of title. In fulfilling the proposed scheme of transfers, the attorney felt Soffer could become the mortgagee of the National property and thereby be excluded from the radius restriction. The attorney further advised Soffer that he may want to file a declaratory judgment action to determine the validity of the radius restriction.

At the suggestion of his banker, Soffer sought the advice of a second attorney, Donald Weihl, who was at that time practicing as a principal with the firm of Weihl & Millard, Ltd. Three days after meeting with Soffer, Weihl delivered to Soffer two letters. The one letter, dated June 26, 1989, was an opinion letter wherein Weihl stated:

It is the unequivocal legal opinion of this office that the terms of the Lease above referenced would not be violated and provide a reason for the current tenant thereunder to terminate the Lease if a Mortgagee of the Shopping Center in which the leased property is located acquired additional property within the one mile specified in the Lease and leased or sold the property to a food store or a food department of any entity in the food business.

There are any number of methods that could be used to arrange to have the Mortgagee hold the title to the property within the one mile radius to be used for food sales that would be permitted without causing the lease tenant to have the right to terminate the Lease. Should you desire the assistance of this office in structuring such an arrangement, please feel free to call the undersigned.

The other letter included was a transmittal letter addressed to Soffer wherein Weihl warned Soffer that there were many possible rebuttal arguments to his opinion, the most persuasive being that a scheme to avoid the radius restriction by using the mortgagee exclusion would circumvent the language and intent of the parties to the National lease.

Soffer showed the opinion letter but not the accompanying transmittal letter to Shop 'N Save, admittedly to persuade Shop 'N Save to move forward with the plans to lease the property at 650 Carlyle. Soffer met with Matthew McCarthy, the general counsel of Shop 'N Save, and other members of the legal staff, who gave the legal department's approval to proceed with the lease.

Meanwhile, unbeknownst to Shop 'N Save, Soffer had engaged in discussions with National to modify the lease for 655 Carlyle. The lease was amended on June 30, 1989 to give National the right of first refusal to acquire the shopping center and left all other terms and conditions of the lease, including the radius restriction, in effect.

In July and August of 1989 Shop 'N Save continued negotiations with Soffer over the terms of the lease and Soffer's progress in effecting the transfers necessary to fall within the mortgagee exclusion. Also during this period Shop 'N Save had started doing some renovations on the 650 Carlyle property.

In August 1989 Soffer contacted Weihl to help implement the plan to use the mortgag-

ee exclusion to avoid the radius restriction in the National lease. Since their last correspondence, Weihl had left the firm of Weihl & Millard, Ltd. and joined the Belleville office of Thompson & Mitchell as a partner. On August 11, 1989, Weihl wrote another opinion letter to Soffer outlining specifically what Soffer needed to do to fall within the mortgagee exclusion. Weihl set forward in detail how Soffer should purchase the then existing mortgage on the National property from the two insurance companies and have the notes assigned to the land trust, with Magna Trust Company as trustee, which already had title to 650 Carlyle.

In the weeks that followed, Soffer did exactly as Weihl advised in the letter. Meanwhile, Soffer had contact with Peter Bohling, vice-president of real estate for National, concerning the Shop 'N Save lease. Bohling requested, in a letter dated August 23, 1989 to Soffer, an opportunity to review the documents involved in the lease with Shop 'N Save and warned "[i]f you are not willing to do this National Super Markets will be forced to take whatever action is necessary to make sure that our rights have not been violated." Soffer responded that the paperwork involved would be completed shortly and that he would share it with National, however, none was ever provided. Further, these correspondences were never disclosed to Shop 'N Save.

All the steps outlined by Weihl were completed by early October 1989. At that point Shop 'N Save requested a clarification from Soffer and Weihl as to the steps needed to avoid the radius restriction, reassurance that those steps had been completed and would, in fact, be effective in obviating the radius restriction. By letter dated October 5, 1989 to Shop 'N Save's legal counsel, Weihl outlined the pertinent lease provisions and the actions taken to avoid the radius restriction.

Weihl also gave further assurances that all necessary steps had been taken and would effectively serve to counter enforcement of the radius restriction.

After receiving the requested assurances, Shop 'N Save and Soffer continued with their lease negotiations, and the lease was officially executed on October 31, 1989. Article I of the lease contained the use provision, allowing the lessee to use the property to operate a store specializing in the sale of goods customarily sold by grocery stores and "all other uses not prohibited by law or local ordinance." The lease also included in Article XVIII the covenant of quiet enjoyment.[3] There was no provision addressing the radius restriction and its effect on the lease if the radius restriction was found to be enforceable.

On November 27, 1989, National brought suit in St. Clair County, Illinois seeking to enjoin Soffer and Shop 'N Save from developing and using the property at 650 Carlyle as a grocery store. Soffer represented Shop 'N Save's interests and hired Weihl from Thompson & Mitchell to represent them in the litigation. The trial court entered a judgment permanently enjoining Soffer and Shop 'N Save from operating the property at 650 Carlyle as a grocery store. Shop 'N Save thereafter vacated the premises. An appeal was taken and the judgment was affirmed in *National Super Markets v. Magna Trust,* 212 Ill.App.3d 358, 156 Ill.Dec. 469, 570 N.E.2d 1191 (1991).

After the National litigation, Shop 'N Save filed suit against Soffer and Magna Trust Company in St. Louis County seeking over $1,000,000.00 in damages. In its complaint, Shop 'N Save alleged that the covenant of quiet enjoyment, as provided in the lease, had been breached and that it had suffered damages for improvements made to the

---

**3.** The covenant of quiet enjoyment, as contained in the lease, reads in pertinent part:

Lessor represents and warrants that it has full right and lawful authority to enter into this lease for the full term granted herein and ... that it has good and marketable title and [sic] the shopping center free and clear of all occupancies, tenancies, mortgages, liens, and other encumbrances.... Lessor further warrants and covenants that Lessee shall have quiet and peaceable possession of said premises during the term of this lease.... Lessor covenants and warrants that ... Lessee upon paying the rent and performing and observing the covenants and agreements herein contained on Lessee's part to be paid or observed shall and will peaceably and quietly have, hold and enjoy the Leased Premises for the term and any extension of this lease.

property and other incidental expenses in preparing the property as a grocery store. Soffer in turn filed a third-party action against Weihl, personally, his dissolved corporation, Weihl & Millard, Ltd., and Thompson & Mitchell for malpractice, claiming that they should indemnify him for any damages awarded in the main action and for other damages, including legal fees from both the Illinois action and the present litigation.

The trial lasted 12 days and ended with a verdict in favor of Shop 'N Save on its claim for damages, awarding $1,077,725.79 in damages. The jury returned a verdict in favor of third-party defendants on Soffer's third-party claim. Judgment was entered in accordance with the verdict and this appeal followed.

Soffer asserts ten points of error. First, we will discuss the claims against the verdict in Shop 'N Save's favor and then address the claims challenging the verdict in favor of the third-party defendants. Further facts may be incorporated as pertinent to the particular point on appeal.

### Appeal of Judgment in Favor of Shop 'N Save

#### a. Verdict Director

In his first point, Soffer challenges the verdict director submitted by Shop 'N Save. The verdict director, labeled Instruction No. 9, provided:

Your verdict must be for plaintiff if you believe:

First, Plaintiff and defendants entered into a lease agreement whereby plaintiff agreed to lease the premises at 650 Carlyle in Belleville, Illinois from defendants and defendants promised that plaintiff would be able to operate a grocery store on the premises, despite the existence of the radius restriction in the National lease, and

Second, plaintiff was ready, willing and able to perform its agreement, and

Third, plaintiff could not operate a grocery store on the premises at 650 Carlyle, and defendants thereby failed to perform their agreement, and

Fourth, plaintiff was thereby damaged.

Soffer argues this instruction was erroneous in that it was premised on the covenant of quiet enjoyment guaranteeing a particular use. The covenant of quiet enjoyment, under Soffer's interpretation of the law, covenants possession of the parcel of land, not a guarantee of a particular use of the land. In support of this interpretation Soffer cites to the law of Illinois. Our review of the case law, however, leads us to conclude the laws of Illinois and Missouri are substantively the same. We therefore find it unnecessary to recite the general principles for a conflict of laws question. The law in both states requires an actual or constructive eviction of the lessee. *Met. Life Ins. Co. v. Nauss,* 226 Ill.App.3d 1014, 168 Ill.Dec. 887, 891, 590 N.E.2d 524, 528 (1992); *King v. Moorehead,* 495 S.W.2d 65, 69–70 (Mo.App. 1973); *E.B. Jones Motor Co. v. Niedringhaus,* 323 S.W.2d 31, 34 (Mo.App.1959). Constructive eviction occurs when the lessor substantially interferes with the lessee's use or enjoyment of the premises. *Infinity Broadcasting v. Prudential Ins. Co.,* 869 F.2d 1073, 1075 (7th Cir.1989) (applying Illinois law). Likewise, under Missouri law, a constructive eviction occurs when the lessor interferes with the lessee's beneficial possession or enjoyment of the property. *S.L. Motel Enterprises, Inc. v. East Ocean, Inc.,* 751 S.W.2d 114, 118 (Mo.App.1988); *see also Ridley v. Newsome,* 754 S.W.2d 912, 915 (Mo.App.1988) (quoting *King v. Moorehead,* 495 S.W.2d 65, 70 (Mo.App.1973)).

Soffer's reliance on Illinois law in support of his position that the covenant of quiet enjoyment guarantees only undisturbed possession is misplaced. Under both Missouri and Illinois law, the covenant is breached when the lessor interferes with the lessee's possession *or* enjoyment of the property.

The Restatement advocates a similar approach:

Except to the extent the parties to a lease validly agree otherwise, after the tenant enters into possession ... there is a breach of his obligations if there is an eviction by a paramount title, if the eviction deprives the tenant of the use contemplated by the parties.

Restatement (Second) of Property (Landlord and Tenant) § 4.3 (1977). In this context, *see* Restatement (Second) of Property (Landlord and Tenant) § 4.3 cmt. d, illus. 11 (1977).

■ Soffer continues his argumentation by claiming that Shop 'N Save was not deprived of possession or total enjoyment of the property but merely the opportunity to use it as a grocery store. He refers us to the language in the use clause of the lease, arguing that usage of the property was not limited to a grocery store but included "all other uses not prohibited by law or local ordinance." The property here, argues Soffer, could be used for another purpose besides a grocery store or even assigned or sublet for some other purpose. The problem with this argument is that all parties knew Shop 'N Save's interest in the property was solely to use the property as a grocery store and did not enter into the lease until it was reassured it would be able to use the property in that manner. The inclusion of such boilerplate language in the lease cannot be used here to pervert the language of the lease and the parties' intent. Furthermore, Soffer has cited us to no authority where this court has required a lessee to resort to another use other than that contemplated by the lease agreement. Here, the lease expressly listed Shop 'N Save's intended use of the property to operate a store specializing in selling goods customarily sold by grocery stores and contained an express covenant of quiet enjoyment. The injunction National received from the Illinois court frustrated Shop 'N Save's use and enjoyment of the property thereby rendering the property useless.

The verdict director submitted was modeled after MAI 26.06, the verdict director for breaches of bilateral contracts. The language was modified to cover this scenario. The verdict director herein given properly stated the law and was supported by the evidence.

■ Soffer further claims the verdict director was defective in its failure to incorporate the principle that a lessee cannot claim a breach of a covenant of quiet enjoyment based on circumstances known to have existed at the time of entering into the lease. Soffer argues that because Shop 'N Save knew of the potential problems with the radius restriction at the time of entering the lease, it is precluded from claiming damages for a breach of the covenant of quiet enjoyment; that it was a pre-existing condition it knew of and accepted. This argument boils down to an assumption of the risk type defense.

Under the facts of this case, we do not find the court erred in ruling against Soffer on this point. Shop 'N Save's awareness of the radius restriction should not prevent it from recovering for breach of the covenant of quiet enjoyment. Soffer knew that Shop 'N Save would not enter into the agreement unless and until it received reassurance that it could proceed with its plan to use the property for a grocery store. Soffer gave Shop 'N Save the letters and opinions stating in confidence that the steps taken would in fact be effective to avoid the radius restriction in the National lease. Soffer failed, however, to share with Shop 'N Save the one opinion in which Weihl noted potential problems with the scheme to avoid the radius restriction. The only restrictions or encumbrances on Shop 'N Save's possession or use of the property were expressly listed in Exhibit C attached to the lease, which made no mention of the radius restriction in the National lease. Shop 'N Save sought to protect itself further by including the use provision and the covenant of quiet enjoyment in the lease. The inclusion of the covenant of quiet enjoyment was meant to protect Shop 'N Save if the plan to avoid the radius restriction failed.

Under the circumstances of the case at hand we find no instructional error. Soffer's point one is denied.

*b. Lost Profits Evidence*

■ In his second point, Soffer asserts the trial court erred in allowing Shop 'N Save to present evidence of lost profits. Shop 'N Save claimed $1.3 million in expenses and $2.6 million in lost profits. Soffer filed a motion in limine before trial to suppress any evidence of lost profits and timely objected to such evidence when presented at trial. Shop 'N Save was allowed to mention the

alleged lost profits in its opening statement and in subsequent testimony. However, after hearing the evidence on lost profits, the trial court ruled there was insufficient evidentiary basis for an award of lost profits and gave the appropriate withdrawal instructions. The first, given after the court's ruling, specifically instructed:

> THE COURT: Ladies and gentlemen, I'm going to give you an additional instruction of law now. The evidence of lost profits or lost cash flow by the plaintiff Shop 'N Save Warehouse Foods, Incorporated is withdrawn from the case and you are not to consider such evidence in arriving at your verdict, so that the plaintiff's evidence of damages is limited to unreimbursed expenditures at the 650 Carlyle address. And you're so instructed in that regard.

Then, as part of the final jury instructions, the judge gave the following instruction, Instruction No. 8:

> The issue of Shop 'N Save's alleged lost profits or lost cash flow is withdrawn from the case and you are not to consider such issue in arriving at your verdict.

Soffer does not contest the wording of the withdrawal instructions but rather asserts that the giving of the withdrawal instructions was ineffective. Soffer argues that he was prejudiced in that the jury was allowed to hear evidence of lost profits by two of Shop 'N Save's witnesses. Having heard that evidence, Soffer feels it may have nonetheless influenced the jury and caused the jurors to reach a compromise result; that the jurors somehow felt Shop 'N Save was being shortchanged by only receiving out-of-pocket expenditures. Soffer further argues that the court's initial decision to not exclude the evidence of lost profits caused Soffer's counsel to argue during opening statements that Shop 'N Save did not incur a loss in profits but actually allowed it to build an even bigger store at another location. Having introduced that issue during opening statements, and then having the court withdraw the issue later during the trial thereby disallowing Soffer to follow through on his earlier statements, Soffer claims, made him and his counsel lose credibility in the eyes of the jury.

■ The withdrawal instructions given in this case were modeled after MAI 34.02. Withdrawal instructions to disregard a certain element of damage or type of damage are presumptively effective. *Green v. Crunden Martin Mfg. Co.*, 575 S.W.2d 930, 933 (Mo.App.1978). We are to presume that the jury followed the trial court's instruction to exclude the improperly admitted evidence from its consideration and weighed only the properly admitted evidence in coming to its result. *Id.*

Here, the trial court gave withdrawal instructions to the jury on three separate occasions. In addition to the two instructions previously noted, Soffer in his closing argument made direct reference to the evidence of lost profits, to which the court sustained third-party defendants' objection and the jurors were once again reminded that the issue was withdrawn from the case. Soffer has failed to show the existence of any exceptional circumstances to overcome the presumption that the jurors abided by the court's instructions. We therefore rule against Soffer on this point.

■ In his third point Soffer asserts the trial court erred in excluding evidence of profits Shop 'N Save earned from its expansion of another store to refute and offset Shop 'N Save's claim for damages. The proffered evidence involved Shop 'N Save's alternative marketing strategy after the National litigation of expanding an already existing store on Belt Road in Belleville. According to Soffer, the expansion resulted in larger profits than Shop 'N Save would have earned if it would have been able to use the store at 650 Carlyle Road, which excess profits Soffer argues should be used to offset Shop 'N Save's claimed damages.

Shop 'N Save introduced the issue of lost profits through testimony concerning sales projections for the 650 Carlyle property. As noted in the previous point, due to the speculative nature of such evidence the court ruled to sustain Soffer's objections and exclude such evidence of lost profits. The court then sustained Shop 'N Save's motion in limine to exclude the evidence of profits for the new expanded Shop 'N Save, reasoning that the evidence of profits was also too speculative

and not sufficiently certain to be submitted and used as an offset. The court also reasoned that Shop 'N Save's expansion and prospective profits were too casually remote and independent to be allowed as an offset against Shop 'N Save's damages.

In his offer of proof, Soffer relied on the deposition testimony of a Shop 'N Save financial officer who opined that he did not think the new expanded store would have been built if the project at 650 Carlyle had been completed. Soffer also relied in his offer on the testimony of a certified public accountant, whose calculations showed Shop 'N Save earned greater profits with its expanded site than it would have earned had the 650 Carlyle store gone forward. Soffer argues that these excess profits are equal to or greater than the amount of claimed damages of Shop 'N Save and that Shop 'N Save has therefore not suffered any damages or has only diminished damages.

We find no trial court error. First, the foregoing offer of proof admittedly is based on Shop 'N Save's calculations of lost profits which, as discussed in point two, were found by the judge to be too speculative to be submitted to the jury. The issue of lost profits was withdrawn from the case and the jury was instructed accordingly. It defies reason for one to find, on the one hand, that Shop 'N Save's evidence of lost profits should be excluded as too speculative for one purpose and, at a later point, find the lost profits evidence should be admitted to refute or offset the remaining damage claim.

Soffer argues that evidence of lost profits when used for defensive purposes need not be as definite as when lost profit evidence is propounded for offensive purposes. Soffer does not cite us to any authority differentiating between lost profit evidence when used for offensive or defensive purposes. Our reading of the law does not support such a distinction. Soffer's defensive use of the prospective profits of the other store was in response to, and in fact a deviation from, Shop 'N Save's evidence for lost profits. Having removed the issue of lost profits, the evidence of potential profits from the other store cannot serve as an offset for the only remaining damage claim for expenditures.

The claim of damages for expenditures had no relation to the expansion of the other Shop 'N Save store. No argument is made that the expenditures relating to the 650 Carlyle property could be utilized in the expanded Shop 'N Save. The lower court's finding that the expansion of the other Shop 'N Save was too remote and independent from the breach to be used to offset the damages claim of Shop 'N Save was correct under these facts. Point denied.

### c. Mutual Mistake & Commercial Frustration Instruction

Soffer's fourth point contests the trial court's refusal to submit his proffered instruction concerning mutual mistake and commercial frustration. The law is well established that a party is entitled to an instruction upon any theory supported by the evidence. *Int'l Minerals & Chem. v. Avon Products*, 889 S.W.2d 111, 120 (Mo.App. 1994). In determining the appropriateness of a given instruction, we view the evidence in the light most favorable to the submission of the instruction. *Id.*

Soffer asserts the court should have instructed on mutual mistake which would have allowed the parties to avoid the lease. Equity will grant relief for a mistake of fact, which must be a mutual mistake of both parties. *UT Communications Credit v. Resort Dev.*, 861 S.W.2d 699, 707 (Mo.App. 1993). A mutual mistake means that both parties did what neither intended to do. *Id.* It is fundamental that the mistake relate to the existence or nonexistence of a fact, material to the agreement, and not as to a future contingency. *Thies v. St. Louis County*, 402 S.W.2d 376, 381 (Mo.1966). It must be a mistake as to a matter of fact, not as to a matter resting in mere conjecture or belief, and it must appear that knowledge of the fact would have prevented the parties from executing the agreement. *Id.*

Here, Soffer maintains that he and Shop 'N Save executed the lease based on the belief, induced by the advice of third-party defendants, that the radius restriction in the National lease would not preclude the Shop 'N Save store at 650 Carlyle and that

that belief amounted to a mutual mistake of fact. We disagree and find that the circumstances of this case do not support a mutual mistake instruction.

To support the instruction, the mutual mistake must be based on facts in existence at the time of the agreement, not future contingencies. *Ludlow v. Ahrens,* 812 S.W.2d 245, 249 (Mo.App.1991). The parties herein labored under a mistaken belief concerning the enforceability of the radius restriction in the National lease. Both parties knew of the radius restriction. The restriction's legal effect at the time the lease was executed was a matter of conjecture or opinion, not a matter of fact. A mutual mistake in prophesy or opinion is not a basis for avoiding an agreement where such mistake becomes evident through the passage of time. *Id.* Therefore, this is not the type of case where the mutual mistake instruction would apply.

We likewise find that the instruction concerning commercial frustration was not merited under the facts of this case. "Commercial frustration" exists when the happening of an event not foreseen by the parties and not caused by or under the control of either party has destroyed or nearly destroyed the value of the performance or the purpose of the contract. *State ex rel. Mo. Hwy. & Transp. Comm'n v. Jim Lynch Toyota,* 835 S.W.2d 421, 424 (Mo.App.1992). Here, the parties could foresee the litigation over the radius restriction and mortgagee exclusion and the possibility of Shop 'N Save being prohibited from operating a grocery store at 650 Carlyle. The parties could anticipate the outcome and, indeed, sought advice from counsel on the matter. True, neither party wanted the result that was eventually reached, however, the doctrine of commercial frustration does not provide Soffer with a means to avoid a bad result.

The foregoing conclusions are dictated by sound public policy. The doctrines of mutual mistake and commercial frustration are meant to have limited applications so as to preserve the certainty of contracts. *See Dutton v. Dutton,* 668 S.W.2d 585, 591 (Mo. App.1984); *Howard v. Nicholson,* 556 S.W.2d 477, 483 (Mo.App.1977). Soffer cannot now in hindsight vent his discontent with the result of the lease agreement by trying to broaden the application of these doctrines. Point denied.

### d. Admission of Weihl's Conversation

In his fifth point Soffer contends the trial court erred in admitting attorney Weihl's testimony concerning certain conversations had with Soffer after National filed its lawsuit. Soffer argues the testimony was irrelevant and immaterial to any issues in the case and was highly prejudicial.

The testimony at issue involved a conversation Weihl and Soffer had after Weihl was notified of the National litigation. According to Weihl, he was given a copy of the complaint and the lease executed between Soffer and Shop 'N Save, and, after reviewing the lease, he told Soffer he "bit the bullet" and had "taken upon himself all of the risk of a bad result" in the National litigation.

Soffer claims it was prejudicial error to allow Shop 'N Save's counsel to elicit the aforementioned statements. We give the trial court's decision as to the admissibility of evidence substantial deference. *Kansas City v. Keene Corp.,* 855 S.W.2d 360, 367 (Mo. banc 1993). The appellate court will interfere with such a determination only for an abuse of discretion. *Id.* The test for relevancy is whether the material offered tends to prove or disprove a fact in issue or corroborates other evidence. *Id.*

Though the relevancy and materiality of the elicited testimony are arguable, we cannot say its admission amounted to an abuse of discretion. Nor has Soffer proven to the satisfaction of the court the prejudicial effect the testimony allegedly had on the jury. Soffer maintains the testimony was "highly prejudicial" in that it represented gratuitous opinion testimony by counsel that Shop 'N Save was entitled to prevail against Soffer. However, we fail to see how Weihl's remarks concerning the effect of the lease had a prejudicial effect on the jury where the main issue was Soffer's liability to Shop 'N Save under the specific provisions of the lease.

No abuse of discretion appears. Point denied.

### e. Damages Recoverable

Soffer's next point asserts that certain elements of Shop 'N Save's damages claim are not recoverable as a matter of law. The point is divided into three subpoints: (a) pre-lease expenditures, (b) capitalized interest, and (c) expenses incurred after the filing of the National litigation.

Soffer argues in his first subpoint that Shop 'N Save should not recover any expenses incurred prior to October 31, 1989, the date the lease was executed. In its damages claim Shop 'N Save sought $82,-586.12 for costs incurred before the execution of the lease, representing expenses for flooring, demolition and other work in preparing the premises. Soffer maintains an action for breach of a covenant of quiet enjoyment does not warrant recovery of expenditures made prior to the lease's execution, citing *Hough v. Jay–Dee Realty & Inv. Inc.,* 401 S.W.2d 545, 551 (Mo.App.1966). In *Hough,* lessee sued lessor for breach of covenant to construct and deliver possession of the restaurant to be built by lessor. In preparing for his new restaurant lessee closed his smaller restaurant a month before the lease agreement was actually executed and began preparations for the restaurant. The Court of Appeals found the damages awarded lessee were excessive in that lessee should not have been paid for the month preceding the execution of the written agreement. The court reasoned that lessee's expenditures during that month's time were not referable to the contract or its breach. *Id.* at 551.

Our holding here that Shop 'N Save may recover its pre-lease expenditures is not in conflict with *Hough* because, unlike the lessee in that case, Shop 'N Save's expenses were referable to the contract. The evidence at trial was that Soffer and Shop 'N Save agreed to the lease's terms in Spring 1989 and that Shop 'N Save had access to the property before the lease was executed. Shop 'N Save's preparation of the property was consistent with the course of dealings between Shop 'N Save and Soffer in their other lease agreements. Under the terms of the lease, Shop 'N Save was responsible for the leasehold improvements and for preparing the property for use as a grocery store.

The expenditures here related to Shop 'N Save's readying the property as a grocery store, which Soffer contemplated and allowed access to begin. When a party incurs expenses in anticipation of or preparation for performance of a contract, those expenses are recoverable as damages in an action for breach. 25 C.J.S. *Damages* § 46, pp. 759–60. Shop 'N Save's expenditures were therefore recoverable and properly submitted to the jury.

In his second subpoint Soffer challenges Shop 'N Save's claim of damages for capitalized interest. In its damages claim Shop 'N Save sought capitalized interest in the amount of $193,768.00. Soffer argues there was no evidence supporting such an award because the evidence showed it was Wetterau, Shop 'N Save's parent corporation, who incurred this expense, not Shop 'N Save. However, further testimony clarified that although Wetterau borrowed the funds to construct the improvements, Shop 'N Save was eventually charged that amount as an intercompany charge. Such amount was therefore part of Shop 'N Save's reasonable expenses in preparing the property and recoverable in its damages.

Soffer's next challenge to Shop 'N Save's damages contests Shop 'N Save's recovery of expenses incurred after National filed suit. Soffer argues any expenses incurred after the National suit were not recoverable as a matter of law because Shop 'N Save had a duty to mitigate its damages and avoid any consequences of the breach. In support of his argument, Soffer cites a case from Alabama, *Clark v. Cypress Shores Dev. Co.,* 516 So.2d 622 (Ala.1987). In *Clark,* a buyer purchased property from seller with an agreement certain restrictive covenants would be removed. A third party sought to enjoin buyer's use of the property for commercial purposes. The injunction was denied and appeal followed. Buyer meanwhile continued with improving the property. On buyer's separate action for breach, the Alabama Supreme Court adopted the lower

court's reasoning and held that buyer could not recover the expenses incurred for improvements made after the trial court's decision and while the earlier injunctive suit was on appeal. The court felt the buyer proceeded with the improvements at his own risk. *Id.* at 629.

In the case at bar, Shop 'N Save made improvements even before the lease was executed and continued until the trial court issued the injunction. During the National litigation Soffer was aware of Shop 'N Save's use of the property. Shop 'N Save's duty to mitigate arose once Soffer breached the agreement, which occurred when the trial court enjoined further development of the property. Our result may have been different had Shop 'N Save not ceased development while the National appeal was pending.

We also note that the issue of Shop 'N Save's duty to mitigate was presented at trial in the following instruction, Instruction No. 10:

> Your verdict must be for defendants with respect to that portion of the damages claim for work done after November 30, 1989, if you believe that plaintiff should have minimized or prevented such damages through the exercise of ordinary care.

The issue was presented as a fact question. Soffer now attempts to pose the issue as a matter of law, with which we disagree. Point denied.

### f. Weight of the Evidence

 Soffer's ninth point challenges the weight of the evidence. This point does not bear extended discussion. Questions as to the weight of the evidence are not subject to appellate review, but rather are matters within the exclusive province of the trial court. *Nishwitz v. Blosser,* 850 S.W.2d 119, 122 (Mo.App.1993). We will interfere only if there is a complete absence of probative facts to support the jury's verdict. *Id.* After reviewing the record thoroughly, we cannot say there is an absence of probative facts to support the verdict in favor of Shop 'N Save. There was testimony the covenant of quiet enjoyment encompassed both use and possession and that the radius restriction, if enforceable, would inhibit Shop 'N Save's use of

the property as a grocery store. Soffer was warned of the dangers with the plan by Weihl's letter, which Soffer chose not to show Shop 'N Save. Soffer was also advised to seek a declaratory judgment concerning the radius restriction. Additionally, there was further testimony of Soffer's continuous dealings with National without informing Shop 'N Save, in particular, of the reaffirmation of the terms of the National lease. Point denied.

### Appeal of Judgment in Favor of Third–Party Defendants

### g. Exclusion of Audit Letter

 Soffer's final three points relate to the judgment entered in favor of third-party defendants. Soffer argues it was error for the trial court to exclude from evidence an audit letter written by Thompson & Mitchell and expert testimony related thereto. The audit letter, dated May 7, 1990, was prepared by Thompson & Mitchell in response to a request from the auditors for Shop 'N Save and Wetterau concerning pending legal matters. The letter explained the National litigation, then on appeal, and attempted to offer advice on its possible effect. The letter provided in relevant part:

> At the present, we are not in a position to render an opinion as to the result that will be obtained in the Appellate Court. The defenses that have been asserted are difficult and complex, and there is no possibility of settlement in the matter. In the event of an adverse ruling by the appellate court, Wetterau will be unable to resume its development activities at 650 Carlyle Avenue, and will not be able to locate a food store at that location.
>
> Wetterau's lease of the premises at 650 Carlyle Avenue contains lessor's warranty of title to leased premises provisions pursuant to which the lessor warrants marketable title and peaceable possession of 650 Carlyle Avenue. While we are not presently in a position to state an opinion as to the potential loss, if any, Wetterau may suffer by reason of an unfavorable appellate court decision, due to the warranty provisions there is very little likelihood of any material financial loss to Wetterau as a result of the existing litigation.

A copy of the letter was sent to Matthew McCarthy, Shop 'N Save's general counsel.

Soffer sought to admit the audit letter arguing that it was relevant to show that third-party defendants Weihl and Thompson & Mitchell wrote the letter in conflict with Soffer's interests. Thompson & Mitchell at the time of the audit letter was representing Soffer in the National litigation. To write the letter, argues Soffer, was a breach of its fiduciary duty and the applicable standard of care, which caused Shop 'N Save to sue only Soffer for damages.

In his offer of proof, Soffer submitted the audit letter and the testimony of Professor James Devine of the University of Missouri law school to establish that Thompson & Mitchell breached its fiduciary duty and the applicable standard of care and that that breach was one of the factors that caused Shop 'N Save to sue Soffer. He argues the letter assisted Shop 'N Save or rather encouraged Shop 'N Save to sue only Soffer for damages. Soffer further argues the letter shows Thompson & Mitchell's conflicting loyalties. Soffer claims that in light of Thompson & Mitchell's action in writing the audit letter in May 1990, in conflict with Soffer's interests, it may be inferred that Thompson & Mitchell acted similarly in its earlier dealings during August–October 1989 when Weihl joined the firm as a partner. The trial court excluded the evidence ruling that there was no showing that Shop 'N Save (or Wetterau) relied on the letter in forming its suit or that the letter was otherwise relevant.

The law is clear that a trial court has considerable discretion in the exclusion of evidence and its decision will not be disturbed absent an abuse of discretion. *Copeland v. Mr. B's Pool Centers, Inc.*, 850 S.W.2d 380, 381 (Mo.App.1993). When the evidence is excluded, the issue is not whether the evidence was admissible but whether the trial court abused its discretion in excluding it. *Id.*

We find no abuse of discretion here. In contrast with Soffer's claim that the letter caused Shop 'N Save to sue him, McCarthy, who was the general counsel of Shop 'N Save, testified that he did not rely on the May 7th audit letter in recommending that Shop 'N Save sue Soffer for breach of the lease. McCarthy stated the letter played no part in the decision to file suit and that he did not even remember the contents of the letter until doing discovery for this action. Michael McGuire, corporate counsel for Wetterau, testified he did not see the audit letter until after the suit was filed. Furthermore, both testified that at the time the lease was executed they knew Shop 'N Save would have the option of suing Soffer under the lease's warranty of title or the covenant of quiet enjoyment. The trial court ruled Soffer did not sufficiently prove the audit letter's relevance, and considering the trial court's better stance to view the evidence, we cannot say it abused its discretion in this regard.

Soffer also argues the letter shows Thompson & Mitchell's conflicting loyalties and supports the inference that during the August–October 1989 period Thompson & Mitchell favored or had a bias toward Shop 'N Save over Soffer. During that period, however, Soffer and Shop 'N Save had the same interests with respect to the radius restriction and moving forward with the lease. Moreover, Thompson & Mitchell was not directly involved in the lease negotiations for any party and when potential conflicts became apparent, Soffer was so advised by Weihl. In letters dated August 31, 1989 and January 16, 1990, Weihl outlined potential conflicts of interest Soffer may have had with matters represented by Thompson & Mitchell. The January 16th letter enclosed a formal waiver of conflict of interest form. Soffer signed the waiver, dated January 18th, in which he consented to Thompson & Mitchell continuing its representation of Soffer and the other defendants in the National litigation. Accordingly, Thompson & Mitchell's possible conflicting loyalties was raised early-on with Soffer. The audit letter does not evidence, directly or inferentially, the potential conflicting loyalties of Thompson & Mitchell or bias against Soffer. The trial court therefore did not abuse its discretion in excluding the letter and the evidence related to it. Point denied.

### h. Malpractice Verdict Director

In his next point Soffer argues the verdict director submitting the issue of third-party defendants' malpractice did not follow the appropriate MAI. The instructions submitted, argues Soffer, were based on the Illinois Pattern Jury Instructions, which Soffer claims reflected a different approach to instructing the jury than that contained in the MAI and thereby resulted in prejudicial error.

The verdict director was submitted as follows:

### Instruction No. 13

Your verdict must be for Soffer against Weihl and Weihl & Millard, Ltd. if you believe:

First, prior to July 1, 1989 while he was employed by Weihl & Millard, Ltd., Weihl failed to possess and apply the knowledge and use that degree of skill and care ordinarily used by a reasonably well-qualified real estate lawyer practicing under circumstances similar to those shown by the evidence; and

Second, because of such failure, Weihl's contract obligations to Soffer were not performed; and

Third, Soffer was thereby damaged.

Instruction No. 14 relating to third-party defendants Weihl and Thompson & Mitchell contained the same language.

■■■■ Soffer's challenge to the instructions must fail. First, we point out that Soffer did not object to these instructions before the case was submitted to the jury. We therefore find his challenge is not preserved for review. See Rule 70.03. Furthermore, these instructions were tendered by Soffer. In general, a party may not complain of an error in an instruction he requested. Sullivan v. KSD/KSD–TV, 661 S.W.2d 49, 51 (Mo.App.1983). Despite these considerations, Soffer requests plain error review.

We decline. A new trial is not warranted where the challenged instruction was one he submitted and given without timely objection.

■■■■ Soffer also argues the jury was misguided by submitting the instructions based on Illinois Pattern Jury Instructions. The instructions offered were based on a modified MAI 26.02. Soffer asserts the more appropriate instruction would have been MAI 11.02, 11.05 and 11.06, or modified versions thereof. Those instructions cited by Soffer deal with negligence actions, defining negligence or ordinary care. Soffer overlooks the fact that he was the one who submitted the instructions based on a breach of contract theory, not a tort theory. The instructions were further proper with their modified language incorporating the law of Illinois. Soffer conceded at trial that Illinois law controlled his third-party claim and under the facts of this case it appears such a conclusion is correct considering the relevant contacts with the state of Illinois.[4] A modified MAI instruction may be submitted with Illinois substantive law so long as the instruction does not contain abstract statements of the law. Hicks v. Graves Truck Lines, Inc., 707 S.W.2d 439, 445–46 (Mo.App. 1986). Soffer argues the instructions herein given were abstract statements of the law. We disagree. The instructions were specific and required the jury to make a finding whether third-party defendants failed to possess and apply the knowledge or do what a like lawyer would have done under the circumstances shown by the evidence.

■■■ As part of Soffer's argument that abstract statements of the law were read to the jury, Soffer refers us to the trial court's ruling allowing third-party defendants' counsel to read to the jury an excerpt from the case O'Brien v. Noble, 106 Ill.App.3d 126, 61 Ill.Dec. 857, 435 N.E.2d 554 (1982), in the course of his cross-examination of Soffer's

---

4. Soffer sought advice from Weihl, an Illinois real estate attorney, concerning an Illinois lease. The property at issue is situated in Illinois and the lessor of the property is an Illinois land trust.

The negotiations supposedly took place in Illinois. Furthermore, the lease was governed by Illinois law and the opinions rendered by Weihl,

expert, Charles Edwards.[5] The portion read aloud went as follows:

> An attorney is liable for malpractice only when he fails to exercise a reasonable degree of skill, not when he makes an error in judgment; his conduct is to be viewed in the context of the events at the time of the alleged malpractice, not in the light of subsequent developments.

Third-party defendants' counsel followed by inquiring whether Edwards agreed with that statement of the law, to which he responded affirmatively. Soffer asserts the reading of the excerpt constituted additional and erroneous charges to the jury concerning the "error in judgment" rule.

■ Third-party defendants state they used *O'Brien* as an authoritative text to test the bases of Edwards' expert opinion. Our research has come across no Missouri cases where counsel has used a judicial opinion in cross-examining an expert in a legal malpractice case. We agree with third-party defendants, however, that such can be used to test the knowledge of a legal expert and the bases of his opinion. Key to using any text or treatise in the examination of an expert witness is its authoritativeness. *See Grippe v. Momtazee*, 705 S.W.2d 551, 556 (Mo.App. 1986). There is no dispute judicial opinions in published form are generally accepted and accredited within the profession. *See* 6 John H. Wigmore, Wigmore on Evidence § 1703 (Chadbourn rev. 1976). Cross-examining the expert by using an excerpt from *O'Brien* was permissible. We further note that the court expressly instructed the jury that third-party defendants' questions regarding the *O'Brien* case were to go toward the background and the basis of the witness' opinion and not to be considered the truth or part of the instruction of law in the case. We therefore find no error in referencing the case during third-party defendants' cross-examination.

Nor do we find any error in third-party defendants' usage of the *O'Brien* case during direct examination of their own expert witness, Donald Metzger, a practicing attorney who testified regarding a lawyer's duty. Sof-

fer failed to make an objection at that point during the examination. Any challenge has therefore not been preserved. Point eight is denied.

### i. Weight of the Evidence

■ In his final point Soffer claims the verdicts in favor of third-party defendants were against the weight of the evidence and argues the trial court abused its discretion in not granting a new trial on that basis. As referenced above, questions concerning the weight of the evidence are not for this court. *Nishwitz*, 850 S.W.2d at 122. The extent of our review is whether there is a complete absence of probative facts to support the verdict. *Id.*

Our review of the record leads us to conclude there was sufficient evidence to support the verdict in favor of third-party defendants. Third-party defendants offered the expert testimony of Donald Metzger. Metzger testified that there was no malpractice or breach of the applicable standard of care in Weihl's dealings with Soffer. He further testified that third-party defendants exercised due care in their performance and that, in his opinion, there was no duty on the part of third-party defendants to advise Soffer on his lease with Shop 'N Save since Soffer never retained them for that purpose. While Weihl did draft certain letters for Soffer, Soffer never retained Weihl to execute the transactions necessary to comply with the mortgagee exclusion. Similar testimony that third-party defendants did not breach the applicable standard of care came from Weihl himself and Vince Kozsdiy, an attorney in Illinois. The jury was allowed to weigh each of their testimony and judge their credibility. There was further evidence that Soffer was warned of the risks in using the mortgagee exclusion to avoid the radius restriction and that Soffer disregarded certain advice and was not forthright with all parties involved.

Soffer argues at length that third-party defendants should be liable because Weihl did not properly structure the sequence of transactions to fall within the mortgagee ex-

---

and the law offices with which he was affiliated, were based on Illinois law.

5. Edwards is a commercial real estate attorney practicing in Illinois.

clusion. Whether the plan was properly structured is of no real consequence because both the Illinois trial and appellate courts found the plan to avoid the radius restriction would have failed under whatever scheme because the whole scheme to avoid the restriction violated the intent and language of the lease, something Soffer was warned of. The jury heard this testimony and could have reasoned the structure of the transactions was irrelevant considering the Illinois courts assumed all necessary transactions had been made and nonetheless struck the attempt to avoid the lease restriction.

As a final issue, Soffer interjects the argument that the verdicts against Soffer and in favor of Shop 'N Save and third-party defendants are inconsistent. This argument is totally without merit and unworthy of review. Point denied.

The judgment is affirmed.

SMITH, P.J., and GARY M. GAERTNER, J., concur.